Nellie WOODS, as Personal Representative of the Estate of John N. Woods,
Plaintiff-Appellant,

v.

HOLY CROSS HOSPITAL et al.,
Defendants-Appellees.

No. 75–3523.

United States Court of Appeals,
Fifth Circuit.

March 26, 1979.

George A. Kokus, Arthur N. Cohen, Susan Goldman, Miami, Fla., for plaintiff-appellant.

Larry Klein, West Palm Beach, Fla., Edward I. Pollock, Los Angeles, Cal., amicus curiae for Assn. of Trial Lawyers of America.

Barry L. Silber, Asst. Atty. Gen., Tallahassee, Fla., amicus curiae for State of Fla.

Rex Conrad, Paul R. Regensdorf, Fort Lauderdale, Fla., for Holy Cross, etc. et al.

James E. Tribble, Mark Hicks, Richard A. Sherman, Miami, Fla., for Dr. Jefferson R. Edwards et al.

Before JONES, RONEY, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

In this case we are called upon to examine portions of Florida's Medical Malpractice Law [1] and determine whether its mandate that a medical malpractice claimant participate in a mediation process prior to bringing an action in court must be enforced by a federal district court in a diversity case. For the reasons set forth below, we find that this requirement meets federal constitutional standards and must be applied in such an action.

I

On July 21, 1975, Nellie Woods, a citizen of Ohio and the administratrix of the estate of her late husband, John N. Woods, filed an action in federal district court in which she claimed damages pursuant to Florida's Wrongful Death Act [2] for Mr. Woods's death. The alleged cause of death was medical malpractice committed by two physicians and a hospital, all named as defendants. Their malpractice insurers were later added as parties-defendant. Jurisdiction was based upon diversity of citizenship, 28 U.S.C. § 1332 (1976). The defendants separately moved to dismiss Mrs. Woods's complaint, alleging that her failure to abide by the mediation panel requirement of Florida Statutes section 768.44 precluded her action. [3] The district court granted the motions to dismiss on the ground that Mrs. Woods had failed to perform a condition precedent to her suit by not proceeding before a Florida malpractice mediation panel. This appeal was taken by Mrs. Woods from the final judgment dismissing her complaint.

Mrs. Woods has raised various issues in this appeal. Her major arguments are as follows: (1) the Florida Medical Malpractice Law is procedural rather than substantive and under the rules of *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny is inapplicable in a diversity case; and (2) the Florida Medical Malpractice Law violates federal equal protection, due process, and right to jury trial standards. We dismiss her other arguments as nonmeritorious. We will discuss Mrs. Woods's major arguments seriatim after we set forth the relevant Florida statutory scheme.

---

1. The relevant provisions are sections 768.44 and 768.47 of the Florida Statutes (see attached appendix). We construe these provisions as they were in effect upon the date this case was submitted to us, January 31, 1978. For the purposes of this opinion, we disregard any subsequent changes in these statutes.

2. Fla.Stat. §§ 768.16–.27 (1977).

3. The defendants also questioned the presence of diversity jurisdiction because Mrs. Woods held letters of administration for the John N. Woods Estate as issued by the Probate Division of the Circuit Court of Broward County, Florida. According to Mrs. Woods's complaint, she is a citizen of Ohio; the defendants are two Florida citizens, a Florida corporation, and their three corporate insurers (none of which are either incorporated in or have their principal place of business in Ohio). Diversity jurisdiction might be defeated if Mrs. Woods were improperly or collusively named administratrix merely for the purpose of creating such jurisdiction.

The jurisdictional issue was not addressed by the district court and was neither briefed nor argued before us on appeal. While we do not decide this point, we note that *on the record before us* it appears that Mrs. Woods's status as administratrix of her husband's estate creates valid diversity jurisdiction. *See O'Brien v. Stover*, 443 F.2d 1013, 1015–16 (8th Cir. 1971). Cases such as *Kenebrew v. Columbia Land & Timber Co.*, 454 F.2d 1146 (5th Cir. 1972), and *Bass v. Texas Power & Light Co.*, 432 F.2d 763 (5th Cir. 1970), *cert. denied*, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971), are clearly distinguishable on their facts from the present case. It is only natural that John Woods's widow should act as administratrix of his estate; her appointment as administratrix was apparently neither an improper nor collusive attempt to create diversity jurisdiction in what should not in fact be a diversity action.

## II

In 1975 the Florida Legislature found as follows:

> WHEREAS, the cost of purchasing medical professional liability insurance for doctors and other health care providers has skyrocketed in the past few months; and
>
> WHEREAS, it is not uncommon to find physicians in high-risk categories paying premiums in excess of $20,000 annually; and
>
> WHEREAS, the consumer ultimately must bear the financial burdens created by the high cost of insurance; and
>
> WHEREAS, without some legislative relief, doctors will be forced to curtail their practices, retire, or practice defensive medicine at increased cost to the citizens of Florida; and
>
> WHEREAS, the problem has reached crisis proportion in Florida . . . ..

*Preamble* to 1975 Fla.Laws ch. 75–9. Accordingly, it adopted the Medical Malpractice Reform Act of 1975. 1975 Fla. Laws ch. 75–9, § 1. The predecessor to sections 768.44 and .47 was contained in that provision. *Id.* § 5.

Florida Statutes section 768.44 creates a system under which prior to bringing an action against a medical or osteopathic physician, podiatrist, hospital or health maintenance organization in any court of the state a medical malpractice claimant must submit his claim to a medical liability mediation panel by filing the claim on special forms with the clerk of a state circuit court.[4] If he fails so to file he is precluded from bringing any action based on medical malpractice in "any court of [the state of Florida]." *See, e. g., Riccobono v. Cordis Corp.,* 341 So.2d 805 (Fla.Dist.Ct.App.1977).

After a claim is properly filed all defendants must answer within twenty days or else a claimant may proceed in court. If answers are timely filed a claim is heard by a mediation panel consisting of a state circuit judge,[5] an attorney, and a licensed physician. The circuit judge is chosen in a "blind" system; the attorney and physician are chosen from lists compiled by the chief judge of each judicial circuit in Florida. The attorney and physician panel members are each paid one hundred dollars for each day they spend on the panel; both parties to a claim are assessed equally for the payment of these fees. A hearing must be held within ten months of the filing of a claim with the circuit court clerk or else the mediation panel's jurisdiction terminates and a normal lawsuit may be filed; any applicable statute of limitations is tolled from the filing of a claim until at least sixty days after a mediation panel either mails its decision to the parties or has its jurisdiction otherwise terminated. Discovery rules of the Florida Rules of Civil Procedure are applied at panel hearings, and procedural and evidentiary rules are less formal than in ordinary civil litigation. Parties may subpoena and cross-examine witnesses at hearings; counsel for the parties may make opening and closing statements. The judge presiding over a hearing is precluded from presiding over any subsequent judicial proceedings arising out of the claim at issue, and other panel members may act as neither counsel nor witnesses at any subsequent trial of the claim.

Within thirty days of the completion of any hearing a panel files a written decision in which, using specified language, it finds the defendant was or was not negligent and accordingly is or is not liable to the plaintiff. A panel member may concur or dissent to the decision in writing. If liability is found and the parties so agree the panel may proceed to help the parties reach a settlement. In this regard, the panel may recommend a reasonable range of damages,

---

4. "Both under the statute itself and under the rules governing mediation procedures, a claim is essentially a statement of facts describing the alleged acts of malpractice; that is, a pleading comparable to a complaint . . . ." *Herrera v. Doctor's Hosp.,* 360 So.2d 1092, 1095 (Fla.Dist.Ct.App.1978).

5. The state circuit judge heads the panel as a knowledgeable referee and not in his capacity as a state judge. *See Koota v. Parkway Gen. Hosp., Inc.,* 346 So.2d 124, 125 (Fla.Dist.Ct. App.1977).

but may not recommend punitive damages. Any damage recommendation is not admissible into evidence at any subsequent trial.

Section 768.47 provides that if any party rejects the decision of a mediation panel he may institute litigation based on his claim in an appropriate court. The panel findings are admissible into evidence in any subsequent litigation, but specific findings of fact are inadmissible. Parties may comment upon panel findings in opening statement or closing argument just as on any other evidence introduced at trial. If there was a dissenting opinion to the panel's decision the numerical vote of the panel is also admissible into evidence. If a defendant fails to participate in the mediation panel process the plaintiff may disclose this fact in any subsequent civil action. *Carter v. Sparkman*, 335 So.2d 802, 805 (Fla.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). Panel members may not be called to testify as witnesses concerning the merits of a case. The jury is instructed that a panel's finding is not binding upon it but should be accorded such weight as the jury chooses to ascribe to it.

Sections 768.44 and .47 are important parts of Florida's Medical Malpractice Law. They successfully weathered both state and federal constitutional challenges in *Carter v. Sparkman*. We now turn to Mrs. Woods's various attacks on these provisions in the case before us.

### III

■ Mrs. Woods's most troublesome argument is that sections 768.44 and .47 are procedural rather than substantive and thus should be inapplicable in a district court diversity case. As a general rule, in a federal diversity case the district court applies the substantive law of the forum state. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Owl & Turtle, Inc. v. Travelers Indemnity Co.*, 554 F.2d 196 (5th Cir. 1977). The test for the application of state as opposed to federal

law has been expressed in various ways, whether in a "substance-procedure" test, *Erie Railroad v. Tompkins*, an "outcome determinative" test, *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), or by reference to the "discouragement of forum-shopping and avoidance of inequitable administration of the laws," *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). *See generally* C. Wright, *Law of Federal Courts* §§ 54–59 (3d ed. 1976). Under any of the relevant tests we are convinced that Florida Statutes sections 768.44 and .47 must be applied in federal court. Our opinion on this matter is heightened by the fact that we are guided by "the policies underlying the Erie rule." *See Hanna v. Plumer*, 380 U.S. at 467–68, 85 S.Ct. at 1141–42; *Guaranty Trust Co. v. York*, 326 U.S. at 108–12, 65 S.Ct. at 1469–71.

■ Section 768.44 provides that a plaintiff whose claim is based on an injury or death allegedly caused by medical malpractice must submit his claim to a medical liability mediation panel before he files an action in court; section 768.47 requires the admission into evidence of the panel's findings at any subsequent trial of such a claim. If federal courts sitting in diversity cases refuse to apply sections 768.44 and .47, Florida's medical malpractice statutory scheme will be inequitably administered. Non-resident plaintiffs will have a substantial advantage over resident ones, as non-resident suitors may avoid the mediation panel provision simply by bringing their actions in federal court; consequently, the worst form of forum-shopping will be encouraged. As we have observed, the Florida Legislature acted in 1975 to avert what it viewed as an impending crisis in the health care field. An integral part of its action was to require malpractice claimants to submit their claims to mediation, "thereby reducing the cost of medical malpractice insurance and ultimately medical expenses." *Carter v. Sparkman*, 335 So.2d at 806.[6] We would do

6. As we discuss below, see note 17 *infra*, an important part of the mediation process is the subsequent admissibility of panel findings into evidence. Under *Erie* a federal diversity court must permit such panel findings to be admitted into evidence in a Florida-law-based mal-

grave damage to the legislative response evidenced by Florida's Medical Malpractice Law if we refused to apply the mediation requirement in diversity cases. We decline to take such a step. *Cf. Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (state statute barring foreign corporations not qualified to do business in state from suing in state courts barred suit in federal diversity action); 1A J. Moore, W. Taggart, A. Vestal, & J. Wicker, *Moore's Federal Practice* ¶ 0.317[6], at 3236–38 (2d ed. 1978).

We note that our holding that sections 768.44 and .47 must be applied in a diversity case is in accord with the result reached in at least six other federal court decisions. *Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F.Supp. 778 (D.Md.1978); *Perry v. Soldiers & Sailors Memorial Hospital,* No. 78–107 (M.D.Pa. Apr. 10, 1978); *Wells v. McCarthy,* 432 F.Supp. 688 (E.D.Mo.1977); *Marquez v. Hahnemann Medical College & Hospital,* 435 F.Supp. 972 (E.D.Pa.1976); *Wood v. Hernandez,* No. 76–81 (N.D.Fla.

Aug. 31, 1976); *Flotemersch v. Bedford County General Hospital,* 69 F.R.D. 556 (E.D.Tenn.1975). *See Cline v. Richards,* 455 F.Supp. 45 (E.D.Tenn.1978) (implies that court would enforce mediation requirement in diversity case). In each of these cases the district court dismissed a malpractice action because the plaintiff had failed to comply with a state statutory scheme similar (or identical, as in *Wood v. Hernandez* ) to that of Florida Statutes sections 768.44 and .47. We have examined *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I.1978), which Mrs. Woods has proffered as support for her argument that sections 768.44 and .47 should not be applied in this case. We find that *Wheeler* is inapplicable here; it involves a malpractice statutory framework significantly different from that presently before us.[7]

As a result of our holding, before a non-resident plaintiff may bring a Florida-law-based diversity malpractice action he must first follow the steps set forth in

---

practice action. *See Stonehocker v. General Motors Corp.,* 587 F.2d 151, 155–56 (4th Cir. 1978); *Conway v. Chemical Leaman Tank Lines, Inc.,* 540 F.2d 837 (5th Cir. 1976) (Texas rule that in wrongful death action fact of surviving spouse's subsequent remarriage is admissible as background evidence but inadmissible for mitigation of damages applies in diversity case); *cf.* Fed.R.Evid. 302 (effect of presumption regarding state law claim determined by state law); Fed.R.Evid. 501 (rule of privilege concerning state law claim ruled by state law); Fed.R.Evid. 601 (competency of witness concerning state law claim determined by state law); Fed.R.Evid. 803(8)(C) (factual finding resulting from official investigation not excludable hearsay unless appears untrustworthy). As is stated in one treatise, "there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2405, at 326–27 (1971). As did the court in *Conway,* "we recognize in [section 768.47] one of those rare evidentiary rules which is so bound up with state substantive law that federal courts sitting in [Florida] should accord it the same treatment as state courts in order to give full effect to [Florida's] substantive policy." 540 F.2d at 838. "[T]here are some matters of State policy so basic that they should be accorded the same treatment they have in the

State courts even under the new [Federal Rules of Evidence]." *Stonehocker v. General Motors Corp.,* 587 F.2d at 156.

7. In *Wheeler* the court was faced with motions to refer an action to a medical liability mediation panel, not a motion to dismiss. As the district court construed the Rhode Island Medical Malpractice Reform Act of 1976, it acts to refer a state court malpractice action to a mediation panel *only after* the action is filed in state court. As the court stated, "[t]he panel operates essentially as an adjunct of the [Rhode Island] superior courts." 78 F.R.D. at 219. Under section 768.44, as well as the statutes applied in the other cases we have cited, a malpractice claimant must proceed before a mediation panel *prior to* bringing an action in court; satisfaction of the mediation panel requirement is a condition precedent to the jurisdiction of any court in any medical malpractice-based action. *E. g., Riccobono v. Cordis Corp.,* 341 So.2d 805 (Fla.Dist.Ct.App.1977). A state-mandated referral to mediation after an action is filed clearly differs from a state statutory scheme wherein mediation is a jurisdictional prerequisite to any court action; it was recognized in *Wheeler* that Rhode Island's malpractice scheme "differs significantly" from that in Tennessee (or Florida). 78 F.R.D. at 221. Accordingly, we regard Mrs. Woods's reliance on *Wheeler* as inapposite.

section 768.44.[8] If he fails to do so he must face the same result that a resident plaintiff would face in a Florida state court—dismissal of his action until he abides by section 768.44. He will incur no undue detriment in abiding by this provision since section 768.44(4) provides for the tolling of any applicable statute of limitations during the mediation process.[9] After the mediation process is completed, a diversity court must permit the admission of panel findings into evidence pursuant to section 768.47 in any subsequent action based upon the malpractice claim. In our view the result of our holding is essential, as otherwise the principles of *Erie* and its offspring would be violated—non-resident plaintiffs would be encouraged to forum-shop in the federal courts, and justice would be inequitably applied between resident and non-resident malpractice claimants.

## IV

Having decided that a federal diversity court must apply the mediation panel provisions of Florida law, we turn to Mrs. Woods's federal constitutional arguments. We note at the outset that both the Florida provisions in particular, *see Carter v. Sparkman*, 335 So.2d 802 (Fla.1976),[10] *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977), and the medical malpractice mediation requirements of a number of other states in general,[11] have successfully with-

**8.** As we have stated, section 768.44(1)(a) requires submission of a malpractice claim to a medical liability mediation panel before suit may be filed in any court in the state of Florida. It would presumably be within the discretion of a federal district judge to stay for a reasonable time an action filed in district court pending compliance with section 768.44's mediation panel requirement rather than to dismiss such an action outright; such a result might be particularly appropriate where the statute of limitations is about to run. *See Pritchett v. Kerr*, 354 So.2d 972 (Fla.Dist.Ct.App.1978).

**9.** A federal diversity court applies the statute of limitations of the forum state. *L. C. L. Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 566 F.2d 494 (5th Cir. 1978); *Goodbody & Co. v. McDowell*, 530 F.2d 1149 (5th Cir. 1976).

**10.** Mrs. Woods has argued that because of a concurrence in which Justice Adkins stated "[t]his case raises issues . . . which cause me to question the wisdom of our earlier rulings on the Act's constitutionality," *Simmons v. Faust*, 358 So.2d 1358, 1359 (Fla.1978), we should question *Carter v. Sparkman's* holding that sections 768.44 and .47 are valid under the constitutions of both Florida and the United States. We can hardly disregard the conclusive holding of state constitutionality in *Carter v. Sparkman* because of the concurring opinion of a single Florida Supreme Court justice in *Simmons*, a concurrence in which he was joined by none of the other five justices deciding that case. A state supreme court's construction of that state's law is binding upon us. *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 488, 96 S.Ct. 2308, 2312, 49 L.Ed.2d 1 (1976); *Tennon v. Ricketts*, 574 F.2d 1243, 1245 (5th Cir. 1978). We must not resort to speculation as to whether the Florida Supreme Court would rule Florida's Medical Malpractice Law unconstitutional on either state or federal grounds if *Carter v. Sparkman* were before it today; we are bound by its 1976 decision that the Florida provisions are constitutional. *See Shaw v. McCorkle*, 537 F.2d 1289, 1295 (5th Cir. 1976); *Alaska Airlines, Inc. v. Lockheed Aircraft Corp.*, 430 F.Supp. 134, 139–40 (D.Alaska 1977).

**11.** *See, e. g., Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977) (en banc) (mandatory referral of malpractice claim to medical liability review panel not violation of equal protection; mandatory referral of claim to panel and introduction of panel findings into evidence at subsequent trial not violation of right to trial by jury); *Everett v. Goldman*, La., 359 So.2d 1256 (1978) (mandatory use of medical review panel violates neither equal protection nor substantive due process); *Attorney Gen. v. Johnson*, 282 Md. 274, 385 A.2d 57 (1978) (mandatory use of health claims arbitration panel not violation of equal protection; required submission of claim to panel and again to trial court, admissibility and presumptive correctness of panel finding at subsequent trial not violation of right to jury trial); *Paro v. Longwood Hosp.*, Mass., 369 N.E.2d 985 (1977) (mandatory screening before medical malpractice tribunal, requirement that claimant whose claim is rejected by tribunal post bond before further prosecution violate neither equal protection nor procedural or substantive due process); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977) (use of medical review panel violates neither equal protection nor due process; use of review panel and admissibility of report at subsequent trial not violation of right to jury trial); *Comiskey v. Arlen*, 55 A.D.2d 304, 390 N.Y.S.2d 122 (1976) (submission of claim to medical malpractice mediation panel, admissibility of unanimous panel recommendation concerning liability at subsequent trial not violation of equal

stood challenges based on both state and federal constitutional grounds.[12] While we

protection, due process, or right to jury trial); *Parker v. Children's Hosp.,* —— Pa. ——, 394 A.2d 932 (1978) (mandatory use of mediation panel, admissibility of panel findings into evidence violates neither due process nor right to jury trial); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978) (mandatory patients' compensation panel review of all medical malpractice claims violates neither equal protection nor due process; use of panel, admissibility of panel findings at subsequent trial not violation of right to jury trial); *cf., e. g., Jones v. State Bd. of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977) (statute set ceiling on recovery in medical malpractice actions, required physicians and hospitals to maintain malpractice insurance, created malpractice review panels; after discussion of constitutional equal protection and due process standards court remanded case for determination whether facts of malpractice crisis met standards); *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 (1978) (provision requiring physicians to purchase malpractice insurance valid response to malpractice crisis, not violation of equal protection or due process). *But see Wright v. Central Du Page Hosp. Ass'n,* 63 Ill.2d 313, 347 N.E.2d 736 (1976) (mandatory medical review panel unconstitutional because panel provision violated state prohibition against vesting judicial functions in nonjudicial personnel; application of unconstitutional panel provision was unconstitutional restriction on right to jury trial; provision setting $500,000 maximum malpractice recovery unconstitutional); *Simon v. St. Elizabeth Medical Center,* 3 Ohio Op.3d 164, 355 N.E.2d 903 (Ct.Com.Pl.1976) (compulsory mediation provision violates equal protection; admissibility of arbitration panel findings at subsequent trial violates right to jury trial); *cf. Arneson v. Olson,* 270 N.W.2d 125 (N.D.1978) ($300,000 maximum malpractice recovery provision, requirement that physicians obtain malpractice insurance violates equal protection and due process); *Graley v. Satayatham,* 74 Ohio Op.2d 316, 343 N.E.2d 832 (Ct.Com.Pl.1976) (parts of Ohio Malpractice Law violate equal protection).

Each of the last four cases we have cited can be distinguished from the case before us. In *Wright,* the Illinois Supreme Court held the right to jury trial was violated by the malpractice review panel provision *only after* it declared that provision unconstitutional on a purely state constitutional ground. As the court stated,

> Because we have held that these statutes providing for medical review panels are unconstitutional, it follows that the procedure prescribed therein as the prerequisite to jury trial is an impermissible restriction on the right of trial by jury guaranteed by article I,

are not bound by state court determinations on federal constitutional issues, *United*

section 13, of the Illinois Constitution. In so holding, however, *we do not imply that a valid pretrial panel procedure cannot be devised.*

63 Ill.2d at 324, 347 N.E.2d at 741 (emphasis added). *See* Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis,* 46 Fordham L.Rev. 322, 329–30 (1977); Note, *Medical Malpractice Statute—Medical Malpractice Statute Declared Unconstitutional,* 1977 Wis.L.Rev. 203, 214. In *Arneson,* the Supreme Court of North Dakota specifically stated that: "None of the parties before us challenges the constitutionality of North Dakota's medical malpractice claim review panel procedure, and we therefore express no opinion on the subject." 270 N.W.2d at 131. Thus, neither case in fact supports the position argued by Mrs. Woods. We are more troubled by the *Simon* and *Graley* cases. We do observe that both are the decisions of Ohio trial courts. To the best of our knowledge, the constitutionality of Ohio's mediation panel requirement has not yet been addressed by the Ohio Supreme Court. We further note that trial courts originally held mediation panel requirements unconstitutional in Florida, Louisiana, Maryland and New York, but were subsequently overruled in the cases we have set forth above. We are persuaded that the weight of state court authority is more fairly represented by cases such as *Carter v. Sparkman, Eastin v. Broomfield, Everett v. Goldman,* and the like than by the trial court decisions in *Simon* and *Graley.*

**12.** While state laws are subjected to federal equal protection and due process requirements by the fourteenth amendment, U.S.Const. amend. XIV, § 1, the seventh amendment right to jury trial does not apply in state court. *Minneapolis & St. L. R. R. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596–97, 60 L.Ed. 961 (1916); *Wartman v. Branch 7, Civil Div., County Court, Milwaukee County,* 510 F.2d 130, 134 (7th Cir. 1975). Thus, while various state courts have used both federal and state equal protection and due process standards in testing mediation panel requirements, no state court has tested a malpractice statutory scheme against the federal seventh amendment right (which must be preserved by a federal court even in a diversity case, *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610–11, 9 L.Ed.2d 691 (1963); *Ammons v. Franklin Life Ins. Co.,* 348 F.2d 414, 416 (5th Cir. 1965)). Still, many states have constitutional provisions modeled after the seventh amendment, *see* Lenore, *Mandatory Medical Malpractice Mediation Panels—A Constitutional Examination,* 44 Ins.Couns.J. 416, 419 n. 29 (1977); Comment, *The Constitutional Considerations of Medical Malpractice Screening Panels,* 27 Am. U.L.Rev. 161, 171–72 (1977), and in construing

*States ex rel. Moore v. Woods,* 420 F.2d 1260, 1262 (7th Cir. 1970); *Smith v. Estelle,* 445 F.Supp. 647, 661 (N.D.Tex.1977), we do consider these various state decisions relevant to our consideration of Mrs. Woods's constitutional claims. We now make our own examination of the Florida provisions in order to determine their constitutionality.

## A. EQUAL PROTECTION

Before we turn to the specific points of Mrs. Woods's equal protection attack on sections 768.44 and .47, we set forth the appropriate test to be applied when a state statute is challenged on federal equal protection grounds. Traditionally, equal protection analysis was a two-tier scheme, with courts applying either the strict scrutiny or rational basis standard. Strict scrutiny was applied whenever a state statute contained a "suspect classification" or limited a "fundamental right." Suspect classes have included, e. g., race, *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); alienage, *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); and ancestry, *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948). Fundamental rights have been defined as those rights "explicitly or implicitly guaranteed by the Constitution." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Such rights include, e. g., those of privacy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); marriage, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); the vote, *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); and freedom of association, *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Statutes subjected to strict scrutiny have frequently been found to violate equal protection. In all other cases state laws were tested under the rational basis standard, under which:

> The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds *wholly irrelevant* to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (emphasis added).

In recent years another level of equal protection analysis has arguably appeared between strict scrutiny and the rational basis test, a "means scrutiny" test. *See* Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L.Rev. 1, 20–24 (1972). Under this new standard a court inquires whether a challenged state statutory classification *substantially furthers* a purported legislative purpose;[13] it

---

such provisions as they apply to malpractice mediation panels state courts have applied both seventh amendment analysis and case law. *E. g.,* the state cases cited in note 11 *supra.* Accordingly, we are aided by state court determinations based on the right to jury trial as much as by those predicated on state and federal equal protection and due process grounds. *See Capital Traction Co. v. Hof,* 174 U.S. 1, 23, 19 S.Ct. 580, 589, 43 L.Ed. 873 (1899).

13. The apparent origin of the means scrutiny test may be found in the following language from *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971):

The Equal Protection Clause . . . does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

*Id.* at 75–76, 92 S.Ct. at 253–54 (quoting *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412,

does not question the legitimacy of the legislative rationale for the classification under examination. While the means scrutiny standard gives a legislature more latitude than the strict scrutiny test, it requires a state to give greater justification for a statutory classification than is normally required for rational basis analysis.

Under *McGowan v. Maryland* a statute falls before the rational basis test only if a classification rests on grounds "wholly irrelevant" to achievement of a legitimate state purpose, but under means scrutiny there must be a substantial relationship between the ends and means of challenged legislation. A court applying the rational basis test will generally defer to a legislative holding that the stated end will be accomplished by the chosen means, but under means scrutiny a court carefully studies the factual assumptions underlying the suppos-

ed connection between legislative ends and means. *See* Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications,* 55 Tex.L.Rev. 759, 771–72 (1977). At least one commentator has questioned whether the means scrutiny test in fact exists. *Id.* at 773. Even if there is such a test, it may be limited to "quasi" suspect classifications such as sex, the classification examined in *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). *See* Redish, *supra,* at 773–79. Such a test is inapplicable in the case presently before us.[14]

▪ The Florida provisions at issue need not be evaluated under the strict scrutiny standard, as neither a suspect class nor a fundamental right is involved in the classifications[15] made by sections 768.44 and .47.[16] *Accord, e. g., Everett v. Gold-*

---

415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). *See* Gunther, *supra,* at 25–37.

14. We refuse to adopt the means scrutiny analysis utilized in *Jones v. State Bd. of Medicine,* 97 Idaho 859, 870–71, 555 P.2d 399, 407 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). *See* Redish, *supra* at 780–82. Even if such analysis were applied here, however, in our view sections 768.44 and .47 would still be constitutional because of the fair and substantial relationship between the classification made by these provisions and the important state object the Florida Legislature was attempting to achieve by adopting them. See our discussion *infra.*

15. The classifications made by section 768.44 might be viewed in several ways: (1) medical malpractice victims versus victims of other torts, (2) medical malpractice tortfeasors versus other types of tortfeasors, (3) medical malpractice plaintiffs versus medical malpractice defendants, or (4) medical malpractice claims versus other types of claims. In addition, section 768.47 might be deemed to create the classifications discussed in note 17 *infra.* While not all of these possible classifications have been challenged by Mrs. Woods, we reject equal protection challenges against the Florida provisions based upon any of them. As we discuss below, the Florida Legislature had a rational basis for specially distinguishing any of these potential classifications; consequently such special treatment is constitutional.

16. As we have stated, suspect classes and fundamental rights include race, alienage, ancestry, privacy, marriage, association, and the vote; we refuse to extend such status to a

claim for malpractice. Regulation of the practice of medicine does not involve a fundamental right or suspect class, *see McNaughton v. Johnson,* 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed. 352 (1917); *cf. Florida v. Mathews,* 526 F.2d 319, 325 (5th Cir. 1976) (special licensing of nursing home administrators does not involve suspect class or fundamental right); neither should the bringing of a malpractice action.

The argument that sections 768.44 and .47 at least partially deny a malpractice claimant access to the courts and thereby restrict a fundamental right is ill-conceived. Access to the courts is not an independent right; it is accorded special protection *only* when the right a claimant wishes to assert through such access is given a preferred status and thus entitled to special protection *and* if there is no alternative forum in which that specially protected right may be enforced. Congressional Research Service, *The Constitution of the United States of America, Analysis and Interpretation* 1527 (1973 & Supp.1977); J. Nowak, R. Rotunda & J. Young, *Handbook on Constitutional Law* 512–14 (1978). Thus, in *Boddie v. Conn.,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), a judicial forum was the only place in which the indigent plaintiff could obtain a divorce, thereby dissolving the fundamental relationship of marriage and protecting the fundamental right to free association. The Court held that the state could not inhibit court access by setting mandatory filing fees after making a court the only forum for obtaining a divorce. When a claim involves a right not entitled to special constitutional protection, access to the courts may be hindered if there is a rational basis for so doing. *Ortwein v. Schwab,* 410 U.S. 656, 93

man, La., 359 So.2d 1256, 1266 (1978); Attorney General v. Johnson, 282 Md. 274, 308–311, 385 A.2d 57, 77–78 (1978); Comment, supra note 12, at 171. Consequently, there need only be a rational basis for the classifications made by them—

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

 When a state provision does not violate a fundamental right "the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary." Karr v. Schmidt, 460 F.2d 609, 617 (5th Cir.) (en banc) (footnote omitted), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972); accord, Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364–65, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973). We note the special circumstances which gave rise to Florida's Medical Malpractice Reform Act of 1975. As stated in the preamble to this law, supra, the Florida Legislature found that a crisis had developed in Florida's health care industry because of rising malpractice insurance rates. See Carter v. Sparkman, 335 So.2d at 805; Ashler, Medical Malpractice Insurance— The Regulator's View, 49 Fla.B.J. 506 (1975); French, Florida Departs from Tradition: The Legislative Response to the

Medical Malpractice Crisis, 6 Fla.St.U.L. Rev. 423, 424 (1978); Redish, supra, at 759– 62; Note, The Florida Medical Malpractice Reform Act of 1975, 4 Fla.St.U.L.Rev. 50, 51, 57–58 (1976). See generally Roth, The Medical Malpractice Insurance Crisis: Its Causes, the Effects, and Proposed Solutions, 44 Ins.Couns.J. 469 (1977). This crisis would cause injury not only to the health care industry but also to the citizenry of Florida; as physicians curtailed their practices, retired, or practiced defensive medicine and other health care providers restricted their services both the quantity and quality of health care in Florida would diminish. One significant factor causing the rising insurance rates was an increase in malpractice litigation, and one way to reduce such litigation was to screen out nonmeritorious claims through the use of liability mediation panels. See Steinberg, Medical Malpractice Reform Act—A Legislator's View, 49 Fla.B.J. 510, 513 (1975); Comment, Recent Medical Malpractice Legislation—A First Checkup, 50 Tul.L.Rev. 655, 681 (1976). In addition, such panels could encourage the settlement of meritorious claims, since after a panel found a malpractice defendant negligent he would be encouraged to settle the dispute rather than proceed to a trial in which the panel finding would be introduced into evidence against him. See, e. g., Roth, supra, at 495. The use of mediation panels, as well as the provision for the subsequent admission of panel findings in evidence, was a reasonable legislative response to the malpractice problem. Moreover, we note that such panels have apparently proved successful in Florida. In the words of one commentator,

While medical mediation panels have existed for a relatively short time and no formal data have been collected on a

S.Ct. 1172, 35 L.Ed.2d 572 (1973) (state could restrict welfare recipient's court access by setting filing fee for appeal from adverse welfare decision); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (required payment of filing fee prior to discharge in bankruptcy was valid). Since we hold that no fundamental right is affected by the Florida laws, denial of court access is not the restric-

tion of a fundamental right. In any event, we do not find that these provisions significantly restrict a malpractice claimant's access to court since after a mediation panel makes its finding a claimant may proceed to file a court action. The incidental delay in filing an action the mediation requirement causes does not constitute a denial of court access.

statewide basis quantifying the results of panel activity to date, most observers feel that the mediation panel system is an unqualified success. The settlement of meritorious claims is being expedited, claims lacking merit are being weeded out, and truly disputed claims are still going to the jury. The panels appear to provide an effective screening mechanism without imposing undue hardship on the participants. And the jury system is functioning in its purest form—settling true disputes.

French, *supra*, at 428. Under the rational basis standard of equal protection analysis the Florida provisions clearly make constitutionally permissible classifications.[17] In so finding, we agree with the Florida Supreme Court's decision in *Carter v. Sparkman*, as well as the analogous holdings of

the highest state courts in Arizona, Louisiana, Maryland, Massachusetts, Nebraska, and Wisconsin and the Appellate Division of the Supreme Court of New York, see note 11 *supra*. *Cf. Jones v. Union Guano Co.*, 264 U.S. 171, 44 S.Ct. 280, 68 L.Ed. 623 (1924) (state provision requiring state agriculture department analysis of fertilizer prior to bringing of claim for damages from use of fertilizer against fertilizer manufacturer upheld as reasonable condition precedent to bringing suit; required admission of state analysis report into evidence at subsequent trial held valid against equal protection and due process attacks).[18]

## B. DUE PROCESS

The second major constitutional challenge Mrs. Woods raises against sections 768.44 and .47 is a claimed denial of due process.[19]

---

**17.** As a part of her general attack on the mediation panel framework, Mrs. Woods apparently argues that section 768.47 violates equal protection by creating a special class of litigation in which the findings of a mediation panel are admitted as evidence in a subsequent trial. We perceive no such equal protection infirmity. As we have stated, sections 768.44 and .47 involve neither a suspect class nor a fundamental right, so the rational basis test is applicable here. The admissibility of panel findings is a critical part of the mediation panel process. *See* Roth, *supra*, at 497; Comment, *An Analysis of State Legislative Responses to the Medical Malpractice Crisis*, 1975 Duke L.J. 1417, 1461–62. At least fifteen state medical malpractice laws contain such an evidentiary provision. *See Medical Malpractice Mediation Panels: A Constitutional Analysis, supra* note 11, at 352. There is clearly a rational basis for this provision, and it accordingly does not violate equal protection. *See* Comment, *supra* note 12, at 182–84. As for Mrs. Woods's argument that the panel-finding-admissibility rule violates equal protection because a physician may choose not to participate in the mediation process, thereby avoiding the risk that a panel finding adverse to him will be presented to the jury in a subsequent malpractice trial, we think that any possible equal protection problem in this regard was resolved by the conclusive construction of section 768.44 in *Carter v. Sparkman*, 335 So.2d at 805, in which the court held that the fact of a physician's failure to invoke the mediation process may be presented as evidence at any subsequent trial. *See* Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis, supra* note 11, ·at 338–39. We further note that even when a hearing is held, a claimant may choose to pro-

duce no evidence before the panel (of course, by so acting he runs the risk that the panel will find for the defendant). *See Herrera v. Doctor's Hosp.*, 360 So.2d 1092 (Fla.Dist.Ct.App. 1978).

**18.** The decision in *Jones* was based upon the special difficulties incident to a determination of whether a poor crop yield was caused by defective fertilizer or some other problem. In upholding the state requirement that fertilizer be subjected to chemical analysis the Court stated that "[a] state has power to provide for and require a more definite method of ascertaining the essential facts and a better basis upon which judicial determinations may be made." 264 U.S. at 181, 44 S.Ct. at 282. Medical malpractice claims are also claims which present special problems, since expert opinion and testimony is generally an important element in their resolution. *See, e. g.*, Lenore, *supra* note 12, at 418. Florida clearly has the power to provide for and require a more definite method for ascertaining the essential facts incident to a medical malpractice claim through the use of an expert screening body such as a malpractice mediation panel, thereby supplying a better basis upon which a court may resolve such a claim. *See id.* at 425.

**19.** Mrs. Woods argues that the following violations of due process flow from the operation of the Florida Medical Malpractice Law: (1) the denial of access to the courts; (2) the delay in the filing of a court action incident to the mediation process; (3) mandatory arbitration; (4) the admission of panel findings in evidence at a subsequent trial; and (5) a malpractice claimant's inability to voir dire prospective mediation panel members.

The Supreme Court has distinguished between due process and equal protection as follows: " 'Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. 'Equal protection,' on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). Since we have already disposed of Mrs. Woods's equal protection objections to the Florida provisions, we now need only examine the manner in which these statutes affect the fairness of dealings between a malpractice claimant and the state. The Supreme Court recently observed that:

> It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). We find that in this case Mrs. Woods has fallen far short of meeting her burden.

■ While there was a time when substantive due process was used as a weapon through which state laws regulating social and economic activities were frequently invalidated, *see, e. g., Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), beginning with *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), this use of substantive due process was abandoned. In *Nebbia* the Court stated that:

> [T]he function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory. . . .

So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court functus officio. ·

291 U.S. at 536–37, 54 S.Ct. at 515–16. If a regulation is reasonable in relation to its subject and adopted in the interests of the community, it does not violate substantive due process. *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

■ The state must prove a compelling reason for a law only if it restricts a fundamental right; so long as such a right is not affected a law need only rationally relate to a legitimate government end. "Only when a law is a totally arbitrary deprivation of liberty will it violate the substantive due process guarantee." J. Nowak, R. Rotunda & J. Young, *supra* note 16, at 410. As we have already discussed, sections 768.44 and .47 restrict no fundamental rights. They were adopted to achieve an important public end, the preservation of quality health care for the residents of Florida. They were part of a reasonable legislative response to a pressing public problem, and appear to be achieving the purpose for which they were adopted. Consequently, we find that these provisions do not violate Mrs. Woods's right to substantive due process. *Accord, e. g., Everett v. Goldman*, La., 359 So.2d 1256, 1268 (1978).

We now turn to Mrs. Woods's specific due process arguments. See note 19 *supra.* With regard to the denial of and delay in access to court claims, we need merely refer

to our previous discussion on these points. See note 16 *supra.* Sections 768.44 and .47 violate due process no more than they violated equal protection in these two areas. *See Carter v. Sparkman,* 335 So.2d at 807 (England, J., concurring); Comment, *supra* note 12, at 169; *cf. Jones v. Union Guano Co.,* 264 U.S. 171, 44 S.Ct. 280, 68 L.Ed. 623 (1924). Her contention that these provisions violate due process by requiring arbitration of malpractice claims reflects a confusion between *arbitration* and *mediation.* While arbitration generally implies that parties are bound by an arbitrator's decision, Florida merely requires a mediation, or screening, process after which a party is free to proceed to court and file his claim. *See* Redish, *supra,* at 768, 796; Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis, supra* note 11, at 323. State required non-consensual arbitration of medical malpractice claims might present constitutional problems,[20] *see, e. g.,* Redish, *supra* at 796–800; Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis, supra* note 11, at 341–42; 1977 B.Y.U.L.Rev. 189, 193, but no such problems are evident when only mediation is required. As we discuss more fully below, the admissibility of mediation panel findings at a subsequent trial does not unduly affect the fairness of that trial and therefore does not constitute a due process violation. Finally, Mrs. Woods's contention that the method for the selection of mediation panel members violates due process puzzles us. Section 768.44(2)(g) provides that the parties to a malpractice dispute may agree upon a physician and attorney to serve upon the mediation panel, and if they do not so agree they are sent the names of five attorneys and physicians. These names are randomly selected from a list prepared by the chief judge of a Florida judicial circuit. The parties have ten days in which they may challenge the named attorneys and physicians for cause, and if a challenge for cause succeeds the challenged name is stricken and a new name is added to those already under consideration. The actual panel members are chosen when the parties alternately strike names from those provided them until the names of only one attorney and one physician remain. After the panel is chosen the parties

> may question the physician and attorney to determine if either of them has a state of mind regarding the subject matter at issue, the case at hand, or any parties directly or indirectly involved in said case, that will prevent him from acting with impartiality. Upon a determination by the judicial referee that either panelist cannot act with complete impartiality, the judicial referee shall remove said panelist.

Fla.Stat. § 768.44(2)(h) (1977). We find that this selection process fully comports with due process standards.[21] *See Attorney General v. Johnson,* 282 Md. 274, 296, 385 A.2d 57, 70 (1978).

Having rejected all of Mrs. Woods's due process attacks against sections 768.44 and .47, we find that these provisions do not violate the federal right to due process of law.

## C. RIGHT TO JURY TRIAL

Mrs. Woods's final attack against sections 768.44 and .47 is her contention that they

---

**20.** We express no opinion regarding the constitutionality of a statute requiring the arbitration of such claims.

**21.** We note that Mrs. Woods did not exhaust the range of potential due process violations which have been raised in the various attacks upon mediation panel requirements. Other supposed violations have included the limitation of a common law right of recovery without providing a quid pro quo to the disadvantaged party, the burdening of a malpractice claimant with the cost of two proceedings, the infringement of the right to a fair hearing before an impartial tribunal because of the presence of physicians on a screening panel, and the denial of the right to present all causes of action in a single proceeding (since a malpractice claim might arise out of circumstances wherein not all potential defendants were health care providers entitled to pretrial mediation). *See, e. g., State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 512–20, 261 N.W.2d 434, 444–48 (1978). While we need not address such potential due process challenges in this decision, we note that we are no more persuaded by them than was the Wisconsin Supreme Court in *Strykowski.*

combine unconstitutionally to restrict her seventh amendment right to a jury trial.[22] Two seventh amendment questions are presented: (1) does making screening a condition precedent to a jury trial unduly burden the right to such a trial; and (2) does the admission into evidence of a mediation panel's finding on liability usurp the function of a jury.[23]

### 1. Mandatory Screening and the Seventh Amendment:

 Mrs. Woods argues that the delay incident to the mediation prerequisite unconstitutionally infringes upon her seventh amendment right. This contention is without merit. The seventh amendment "does not prescribe at what stage of an action a trial by jury must, if demanded, be had, or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it." *Capital Traction Co. v. Hof,*[24] 174 U.S. 1, 23, 19 S.Ct. 580, 589, 43 L.Ed. 873 (1899). Nothing in the seventh amendment requires that a jury make its findings at the earliest possible moment in the course of civil litigation; the requirement is only that the jury *ultimately* determine the issues of fact if they cannot be settled by the parties or determined as a matter of law. *See In re Peterson,*[25] 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed.

**22.** "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S.Const. amend. VII.

**23.** See note 6 *supra* for our holding that the admissibility of panel findings is so important a part of the mediation panel framework that section 768.47 must be enforced in a federal diversity case.

**24.** In *Capital Traction* the Supreme Court examined a statute in which Congress had extended the jurisdiction of justices of the peace in the District of Columbia, who were deemed non-article III judicial officials, to civil cases in which the amount in controversy did not exceed three hundred dollars. Although the statute provided that the justice of the peace could, upon the request of a party to the action, empanel a "jury" of twelve men and that any justice of the peace decision could be appealed in a jury trial de novo in the supreme court of the District of Columbia, it was alleged that the provision erected an unlawful hindrance to the right to jury trial. After holding that the "jury" empaneled by the justice of the peace did not constitute a common law jury, the court upheld the statute because it *eventually* provided for a seventh amendment jury trial, and stated that:

> The legislature, in distributing the judicial power between courts of record, on the one hand, and justices of the peace or other subordinate magistrates, on the other, with a view to prevent unnecessary delay and unreasonable expense, must have a considerable discretion, whenever, in its opinion, because of general increase in litigation, or other change of circumstances, the interest and convenience of the public require it, to enlarge within reasonable bounds the pecuniary amounts of the classes of claims intrusted in the first instance to the decision of justices of the peace, *provided,* always, *the right of trial*

> *by jury is not taken away in any case in which it is secured by the constitution.*

174 U.S. at 44–45, 19 S.Ct. at 597 (emphasis added).

Just as Congress was free to increase the jurisdiction of justices of the peace because of "the interest and convenience of the public," the Florida Legislature could constitutionally determine that, because of an increase in malpractice litigation and other changes in circumstance, notably the medical malpractice crisis and the attendant risk to public health, the interests of the public required malpractice actions to be heard by a special mediation panel before the parties could exercise their right to a jury trial.

**25.** In *In re Peterson* the Court upheld against seventh amendment challenges a federal district court's appointment of an auditor who was charged

> to make a preliminary investigation as to the facts, hear the witnesses, examine the accounts of the parties, and make and file a report in the office of the clerk of this court, with a view to simplifying the issues for the jury, but not to finally determine any of the issues in the action, the final determination of all issues of fact to be made by the jury on the trial.

253 U.S. at 304, 40 S.Ct. at 544. The auditor was further ordered to express his opinion on several disputed issues of fact. The Court held that the use of an auditor was constitutional— "it cannot be deemed an undue obstruction of the right to a jury trial to require a preliminary hearing before an auditor." *Id.* at 310, 40 S.Ct. at 546.

> [N]o reason exists why a compulsory reference to an auditor to simplify and clarify the issues and to make tentative findings may not be made at law, when occasion arises, as freely as compulsory references to special masters are made in equity. *Reference of*

919 (1920). As stated by the Florida Supreme Court in *Carter v. Sparkman*,[26]

> Although courts are generally opposed to any burden being placed on the rights of aggrieved persons to enter the courts . . . there may be reasonable restrictions prescribed by law. Typical examples are the fixing of a time within which suit must be brought, payment of reasonable cost deposits, pursuit of certain administrative relief such as zoning matters or workmen's compensation claims, or the requirement that newspapers be given the right of retraction before an action for libel may be filed.

335 So.2d at 805. If a federal court may constitutionally refer a complicated matter to an auditor or special master, *see In re Peterson; Crateo, Inc. v. Intermark, Inc. (In re Crateo, Inc.)*, 536 F.2d 862, 867–68 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976) (reference of complicated matter to special master, reading of master's report to jury not violation of seventh amendment); Fed.R.Civ.P. 53; 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 53.14[3], at 3037–38 (2d ed. 1977), it may certainly utilize a medical liability mediation panel without violating the dic-

tates of the seventh amendment. Once the panel has considered the evidence and rendered its decision either party to the claim is free to proceed to a jury trial; the jury will remain the ultimate arbiter of the case. So long as Mrs. Woods's right to have her claim fully and finally determined by a jury is preserved, she cannot be heard to complain that her right to a jury trial has been unconstitutionally restricted.[27] *Accord, e. g., Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977) (en banc); *Attorney General v. Johnson*, 282 Md. 274, 297–306, 385 A.2d 57, 71–75 (1978); *see* Lenore, *supra* note 12, at 420–21; Redish, *supra*, at 796; Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis, supra* note 11, at 329–31.

2. *Admission of Panel Findings in Evidence at Subsequent Trial and the Seventh Amendment*:

Mrs. Woods maintains that the presentation of panel findings on liability at a subsequent jury trial will so influence the jury that it will be unable independently to examine the question of liability, particularly since section 768.47 precludes the calling of panel members to testify regarding the merits of the case.[28] We are unable to

---

complicated questions of fact to a person specially appointed to hear the evidence and make findings thereon has long been recognized as an appropriate proceeding in an action at law.

*Id.* at 314, 40 S.Ct. at 548 (emphasis added). It is no less constitutional to refer a medical malpractice claim, which generally involves complicated issues of fact, see note 18 *supra*, to a specially appointed panel that will hear the evidence and make findings thereon than it was to compel reference to the auditor in *In re Peterson. See generally Colgrove v. Battin*, 413 U.S. 149, 156–57, 93 S.Ct. 2448, 2452–53, 37 L.Ed.2d 522 (1973).

**26.** See note 12 *supra* for our discussion of the seventh amendment and state cases addressing right to jury trial-based challenges to mediation panel requirements.

**27.** Mrs. Woods has further complained that section 768.44(2)(i)'s requirement that the attorney and physician members of the mediation panel be paid one hundred dollars per day as compensation for their services and that these fees be assessed equally against the parties to the claim unduly burdens a malpractice claimant's access to court, and thus to a jury. This

contention is untenable. Both *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), and *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), stand for the proposition that reasonable fees may be set as a prerequisite to bringing a court action so long as a fundamental right is not being asserted therein. See note 16 *supra*. Moreover, such fees are not at all unprecedented. When a federal court orders the use of a special master it may order a party to compensate the master for his services. Fed.R.Civ.P. 53(a). Such a practice is clearly constitutional. *See In re Peterson* (court may constitutionally order parties to pay auditor's and stenographer's fees); *cf. Capital Traction Co. v. Hof* (parties may be required to bear the cost of two trials of the same action).

**28.** The appellees have argued that Mrs. Woods's seventh amendment objection to the admission of panel findings into evidence is not yet ripe for adjudication because a district court has not yet been called upon to admit such findings into evidence either on behalf of Mrs. Woods or some or all of the appellees herein. We do not agree. We have held that

accept this contention. Section 768.47(2) specifically provides that "[t]he jury shall be instructed that the conclusion of the hearing panel shall not be binding, but shall be accorded such weight as they choose to ascribe to it." The panel finding is a particularly relevant, but not conclusive, form of evidence. The parties to a malpractice dispute are free to present the same witnesses and exhibits before the trial jury that they presented to the mediation panel, and the jury may draw its own conclusions from their testimony, even if in so doing it rejects the panel's finding. We observe that the United States Supreme Court has on several occasions approved the admission of expert findings into evidence before a jury and has consistently rejected seventh amendment challenges to such a procedure. In *Meeker v. Lehigh Valley Railroad*, 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), the Supreme Court held that a provision in the Interstate Commerce Act providing that findings and orders of the Interstate Commerce Commission were admissible as prima facie evidence of the facts stated therein in a suit brought to enforce a reparation award did not violate the seventh amendment. The Court observed that:

> This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it anywise work a denial of due process of law.

*Id.* at 430, 35 S.Ct. at 335; *see Mills v. Lehigh Valley Railroad*, 238 U.S. 473, 35 S.Ct. 888, 59 L.Ed. 1414 (1915). Unlike the

provision upheld in *Meeker*, section 768.47 establishes no prima facie rule of evidence; it merely states that the jury should give panel findings such weight as it feels appropriate. In *In re Peterson* the Supreme Court again addressed the admission into evidence of a report containing opinions on several disputed issues of fact. See note 25 *supra*. The *Peterson* Court stated that:

> The report will . . . be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. *The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put.*

253 U.S. at 310–11, 40 S.Ct. at 546 (emphasis added). We cannot see any substantive difference between the procedure approved in *Peterson* and that called for by section 768.47.[29] *See Crateo, Inc. v. Intermark, Inc. (In re Crateo, Inc.)*, 536 F.2d 862, 868 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976). The mere unavailability of panel members for testimony at the subsequent trial does not render section 768.47 unconstitutional. *Id.; accord, Eastin v. Broomfield*, 116 Ariz. 576, 580–81, 570 P.2d 744, 748–49 (1977) (en banc).

Mrs. Woods relies heavily on two state court decisions, *Wright v. Central Du Page Hospital Association*, 63 Ill.2d 313, 347 N.E.2d 736 (1976), and *Simon v. St. Elizabeth Medical Center*, 3 Ohio Op.3d 164, 355 N.E.2d 903 (Ct.Com.Pl.1976), for her proposition that the admissibility requirement is invalid. As we have already discussed, see note 11 *supra, Wright* does not in fact stand

section 768.47 is an integral part of Florida's response to the medical malpractice litigation problem and that consequently the dictates of *Erie* require its application in a diversity case. It is clearly appropriate for us to address, and reject, Mrs. Woods's seventh amendment challenge to the admissibility requirement at this time.

**29.** *In re Peterson* provided the basis for rule 53, which provides that the report of a special

master is admissible as evidence of the matter he found and that this report may be read to the jury. Fed.R.Civ.P. 53(e)(3); *see* 5A J. Moore & J. Lucas, *supra*, ¶ 53.14[3], at 3037–38. While reference to a special master is to be the exception rather than the rule, and in a jury case should only be made when complicated issues must be resolved, Fed.R.Civ.P. 53(b), we feel that a malpractice case is appropriate for such a reference. *See* note 18 *supra*.

for this point. *Simon* may be disregarded as an aberrational decision—its holding on the jury trial issue has been implicitly or specifically rejected in a number of other state cases. We join in their rejection of *Simon* and accordingly hold that the admissibility provision of section 768.47 does not unconstitutionally usurp the function of a seventh amendment-required jury. *Accord, e. g., Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F.Supp. 778 (D.Md.1978); *Prendergast v. Nelson,* 199 Neb. 97, 107–10, 256 N.W.2d 657, 665–66 (1977); *Comiskey v. Arlen,* 55 A.D.2d 304, 308–10, 390 N.Y.S.2d 122, 125–28 (1976); *see* Lenore, *supra* note 12, at 422; Redish, *supra,* at 792–93; Comment, *supra* note 12, at 179–82; Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis, supra* note 11, at 331–34.

## V

For the reasons set forth above, we find that the district court correctly held that Florida Statutes sections 768.44 and .47 are constitutional, that they must be applied by a federal court in a diversity case, and that Mrs. Woods's complaint must be dismissed for failure to abide by the mediation requirement of section 768.44.

AFFIRMED.

## APPENDIX

Fla.Stat. § 768.44 (1977): *Medical liability mediation panels; membership; hearings.*—

(1)(a) Any person or his representative claiming damages by reason of injury, death, or monetary loss on account of alleged malpractice by any medical or osteopathic physician, podiatrist, hospital, or health maintenance organization against whom he believes there is a reasonable basis for a claim shall submit such claim to an appropriate medical liability mediation panel before that claim may be filed in any court of this state.

(b) Claims shall be made on forms provided by the circuit court and shall be filed initially with the clerk of that court, with copies mailed to the person against whom the claim is made and to the administrative board licensing such professional. Service of process shall be effected as provided by law. Constructive service of process may be effected as provided by law.

(c) All parties named as defendants in the claim shall file an answer to such claim within 20 days of the date of service. No other pleadings shall be allowed. If no answer is filed within such time limit, the jurisdiction of the mediation panel over the subject matter shall terminate, and the parties may proceed in accordance with law.

(2) The chief judge of each judicial circuit shall prepare a list of persons available to serve on medical liability mediation panels whose purpose shall be to hear, and facilitate the disposition of, all medical malpractice actions arising within the jurisdiction of the circuit. The number of persons on the list shall be determined by the chief judge, but they shall be in sufficient numbers to efficiently carry out the intent of this section. Each hearing, as hereinafter provided for, shall be before a three-member panel, hereinafter referred to as the "panel," "mediation panel," or "hearing panel," composed as follows: a judicial referee, who shall be the presiding member of the hearing panel; a licensed physician; and an attorney. The judicial referee shall be a circuit judge. Such appointments of judicial referees shall be made by a "blind" system. The other panel members shall be selected in accordance with the following procedure:

(a) A list of physicians licensed to practice under chapter 458 or chapter 459 shall be prepared by the chief judge. In making the list, the chief judge may accept the recommendations of recognized professional medical societies. The list shall, if possible, be divided into lists of physicians according to the particular specialty of each.

(b) A list of qualified attorneys shall be prepared by the chief judge. In making the list, the chief judge may accept the recommendations of recognized professional legal societies.

(c) Names of physicians and attorneys may be added to, or taken off, the panel list at any time by the chief judge at his discretion; however, all names added to the list shall be placed at the bottom of the list.

(d) A physician or attorney selected to be on the hearing panel for a particular case may disqualify himself or be challenged for cause.

(e) A filing fee not to exceed $25 shall be established by the chief judge in each circuit and shall be paid to the clerk of the circuit court. The filing fee shall be used to meet such incidental expenses as the panel may incur.

(f) Within 30 days after service of process, the parties shall file with the clerk a document designating the type of medical specialist who should hear the claim. In the event the parties do not agree on the specialist, the judicial referee shall make the determination. In no event shall more than one medical practitioner serve on a mediation panel.

(g) If both parties agree upon a doctor and an attorney to serve on the hearing panel, they may so stipulate. In the event no agreement is reached within 10 days after determination of the specialty of medical practice involved, the clerk shall mail to the parties and the panel members hereinafter described the names, selected at random, of five attorneys who are members of the hearing panel list and the names, selected at random, of five physicians of the designated specialty who are members of the hearing panel list or, if it is impractical to designate the physicians by specialty, the names, selected at random, of five physicians without regard to specialty. Thereafter, the panel members so selected shall have 10 days within which to disqualify themselves, and the parties shall have the same time in which to challenge panel members for cause. A decision on challenges for cause shall be made by agreement or by the judicial referee. If there are disqualifications or challenges for cause, the clerk shall appoint additional panel members as required. Thereafter,

from the lists of five attorneys and five physicians, the parties shall agree on one attorney and one physician to serve on the hearing panel. If the parties are unable to agree, each side shall then strike names alternately from the attorneys' list and from the physicians' list separately, with the claimant striking first, until each side has stricken two names from each list. The remaining attorney and physician shall serve on the hearing panel.

(h) After selection of the panelists, the judicial referee and either party may question the physician and attorney to determine if either of them has a state of mind regarding the subject matter at issue, the case at hand, or any parties directly or indirectly involved in said case, that will prevent him from acting with impartiality. Upon a determination by the judicial referee that either panelist cannot act with complete impartiality, the judicial referee shall remove said panelist.

(i) Each of the non-judicial panelists shall be paid $100 per day for expenses for each day or portion of a day spent upon the hearing panel. The court shall assess both parties equally for the payment of such expenses to the panelists.

(3) The clerk shall, with the advice and cooperation of the parties and their counsel, fix a date, time, and place for a hearing on the claim before the hearing panel. The hearing shall be held within 120 days of the date the claim was filed with the clerk unless, for good cause shown upon order of the judicial referee, such time is extended. Such extension shall not exceed 6 months from the date the claim is filed. If no hearing on the merits is held within 10 months of the date the claim is filed, the jurisdiction of the mediation panel on the subject matter shall terminate, and the parties may proceed in accordance with law.

(4) The filing of the claim shall toll any applicable statute of limitations, and such statute of limitations shall remain tolled until the hearing panel issues its written

decision or the jurisdiction of the panel is otherwise terminated. In any event, a party shall have 60 days from the date the decision of the hearing panel is mailed to the parties or the date on which the jurisdiction of the panel is otherwise terminated in which to file a complaint in circuit court.

(5) All parties shall be allowed to utilize any discovery procedure provided by the Florida Rules of Civil Procedure. Any motion for relief arising out of the use of such discovery procedure shall be decided by the judicial referee. The judicial referee may in his discretion make reasonable limitations on the extent of discovery.

(6) The claim shall be submitted to the hearing panel under such procedural rules as may be established by the Supreme Court; however, strict adherence to the rules of procedure and evidence applicable in civil cases shall not be required. Witnesses may be called; all testimony shall be under oath; testimony may be taken either orally before the panel or by deposition; copies of records, x-rays, and other documents may be produced and considered by the panel; and the right to subpoena witnesses and evidence shall obtain as in all other proceedings in the circuit court. The right of cross-examination shall obtain as to all witnesses who testify in person. Both parties shall be entitled, individually and through counsel, to make opening and closing statements. No transcript or record of the proceedings shall be required, but any party may have the proceedings transcribed or recorded. The judge presiding at the hearing shall not preside at any trial arising out of the claim or hear any application in the case not connected with the hearing itself. No other hearing panel member shall participate in a trial arising out of the claim, either as counsel or witness.

(7) Within 30 days after the completion of any hearing, the hearing panel shall file a written decision with the clerk of the court who shall thereupon mail copies to all parties concerned and their counsel. The panel shall decide the issue of liability and shall state its conclusion in substantially the following language:

(a) "We find the defendant was actionably negligent in his care or treatment of the patient and we, therefore, find for the plaintiff"; or

(b) "We find the defendant was not actionably negligent in his care or treatment of the patient and we, therefore, find for the defendant."

The decision shall be signed by all members of the hearing panel; however, any member of the panel may file a written concurring or dissenting opinion.

(8) After a finding of liability, if the adverse parties agree, the panel may continue mediation for the purpose of assisting the parties in reaching a settlement. In such event, the panel shall also make a recommendation as to a reasonable range of damages, if any, which should be awarded in the case. The recommendation as to damages shall include, in simple, concise terms, some breakdown as to the portion of the recommended damages attributable to:

(a) Past and estimated future health or custodial care expenses attributable to the alleged malpractice, or

(b) Any of the other elements of damage:

1. Enumerated in s. 768.21 for wrongful death, or

2. Recognized by the Florida Standard Jury Instructions as elements of damages in injuries due to negligence. However, the panel shall not have the right to determine punitive damages. Any findings of damages shall not be admissible in evidence in a subsequent trial.

(9) No member of the hearing panel shall be liable in damages for libel, slander, or defamation of character of any party to the mediation proceedings for any action taken or recommendation made by such member acting within his official capacity as a member of the hearing panel.

(10) The provisions of subsections (1) through (9) shall not be applicable to any case in which formal suit has been instituted prior to the effective date of those subsections, which shall be July 1, 1975.

Fla.Stat. § 768.47 (1977): *Civil medical malpractice actions; procedures; admissibility of evidence.*—

(1) In the event any party rejects the decision of the Medical Liability Mediation Panel, the claimant may institute litigation based upon the claim in the appropriate court. Furthermore, in any civil medical malpractice action, the trial on the merits shall be conducted without any reference to insurance, insurance coverage, or joinder of the insurer as a codefendant in the suit.

(2) The conclusion of the hearing panel on the issue of liability may be admitted into evidence in any subsequent trial. However, no specific findings of fact shall be admitted into evidence at trial. Parties may, in the opening statement or argument to the court or jury, comment on the panel's conclusion in the same manner as any other evidence introduced at trial. If there is a dissenting opinion, the numerical vote of the panel shall also be admissible. Panel members may not be called to testify as to the merits of the case. The jury shall be instructed that the conclusion of the hearing panel shall not be binding, but shall be accorded such weight as they choose to ascribe to it.

(3) The provisions of this section shall not be applicable to any case in which formal suit has been instituted prior to the effective date of this section, which shall be July 1, 1975.

RONEY, Circuit Judge, concurring:

I concur in the result reached by Judge Tjoflat on the ground that the Florida plan for handling medical malpractice claims meets the rational relationship standard required for constitutionality, which all parties here agree to be the proper test. Once that standard is met, neither the federal Government nor this Court should concern itself with the wisdom of the plan. A state program can be both good and bad, or either, and still be rational so as to hurdle the constitutional obstacles of equal protection and due process. The success of a program, or lack thereof, does not provide the key to constitutionality, only rationality or the lack thereof.