No. 80-19

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

BRUCE LINDER,

Plaintiff,

vs.

C. W. SMITH, M.D.; ROGER MURRAY, M.D.;
and the MONTANA MEDICAL ASSOCIATION, a
Montana corporation,

Defendant.

ORIGINAL PROCEEDING:

Counsel of Record:

For Plaintiff:

Hon. Mike Greely, Attorney General, Helena, Montana
Douglas R. Drysdale, Bozeman, Montana
R. P. Ryan argued, Billings, Montana

For Defendants:

Gerald Neely argued, Billings, Montana
Bruce Toole, Billings, Montana

For Amicus Curiae:

Luxan and Murfitt Law Firm, Helena, Montana

Submitted: March 23, 1981
Decided: JUN 10 1981

Filed: JUN 10 1981

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff Linder seeks a determination of the constitutionality of the Montana Medical Malpractice Panel Act, sections 27-6-101 et seq., MCA. This Court accepted original jurisdiction of the cause in a declaratory judgment proceeding. We find that the act is constitutional with one exception as hereafter noted.

Plaintiff Linder allegedly suffered an injury while he was a patient of Dr. Roger Murray. His claim against the doctor constitutes a "malpractice claim" within the definition of section 27-6-103(2), MCA, and by statutory requirement should have been filed with the panel. Section 27-6-105, MCA. Plaintiff refused to submit his claim to the panel, arguing that the Panel Act is unconstitutional on its face.

The panel was created by the 1977 legislature and is composed of three lawyers and three health care providers. The articulated purposes of the panel are to screen malpractice claims in order to prevent the filing in court of actions which do not "permit at least a reasonable inference of malpractice" and to promote settlement of meritorious claims. Section 27-6-102, MCA. A claimant must submit his claim to the panel prior to filing in court, section 27-6-301, MCA, but the claimant is not bound by the decision of the panel, section 27-6-606, MCA, nor is the decision admissible in a subsequent judicial action, section 27-6-704, MCA.

Plaintiff challenges the constitutionality of the act on its face, alleging violations of:

(1) the right to a jury trial;

(2) the right of access to the courts;

(3) substantive and procedural due process;

(4) the prohibition against special legislation;

(5) equal protection of the laws;

(6) the principle of separation of powers;

- 2 -

(7) the taxing powers;

(8) the right of public participation and the right to know;

(9) freedom of speech and freedom from libel.

Plaintiff's first contention is that the mandatory submission of claims to the panel unconstitutionally interferes with his right to trial by jury, as guaranteed by 1972 Mont. Const., Art II, § 26. Defendants argue that a claimant is free to continue to jury trial no matter what the decision of the panel, and the jury remains the final determiner of fact. Further, the panel decision is not binding, nor is it admissible at trial. Thus, there is no interference with the jury trial process. Defendants argue that submission to the panel is merely a permissible delay in the path to the ultimate jury verdict. We agree.

The Montana Constitution guarantees the litigant the right to trial by jury. This Court has held that the right to trial by jury in this state is the same as that guaranteed by the Seventh Amendment. Consolidated Gold & Sapphire Mining Co. v. Struthers (1910), 41 Mont. 565, 571, 111 P. 152, 155. In determining the extent of this right, the federal courts have focused on preserving the right of trial by jury, rather than the incidents involved in carrying out that right; it is a matter of substance, rather than form. Colgrove v. Battin (1973), 413 U.S. 149, 155-156, 93 S.Ct. 2448, 2452, 37 L.Ed.2d 522, 528.

The purpose of the jury in civil cases is to assure a fair and equitable resolution of factual issues. Colgrove, supra, 413 U.S. at 157, 93 S.Ct. at 2453, 37 L.Ed.2d at 529. Therefore, changes which affect the form, but not the substance of the right may pass constitutional muster. Justice Brandeis, in approving the use of an auditor to narrow the issues of fact for a jury and to express an opinion on the facts, noted:

- 3 -

"The command of the 7th Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained. Walker v. New Mexico & Southern Pacific R. R. Co., 165 U.S. 593, 596. Compare Twining v. New Jersey, 211 U.S. 78, 101. It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with." Ex parte Peterson (1920), 253 U.S. 300, 309-310, 40 S.Ct. 543, 546, 64 L.Ed 919, 923-924.

The Montana Court and other courts have approved various pretrial procedures which burden the claimant in his efforts to get into court. The requirement of a pretrial conference does not violate the jury trial right. State ex rel. Kennedy v. District Court (1948), 121 Mont. 320, 194 P.2d 256; submitting a case to a master prior to giving it to the jury does not violate the Seventh Amendment. Crateo, Inc. v. Intermark, Inc. (9th Cir. 1976), 536 F.2d 862, 867-868, cert.denied 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180; Rule 53, M.R.Civ.P.

Several jurisdictions have addressed the problem of allowing the panel's findings into evidence in a subsequent trial, questioning whether this practice interferes with the jury's fact-finding role. A New York Supreme Court determined that the jury is still the final arbiter, with the panel's opinion being treated as merely another expert opinion. Comiskey v. Arlen (1976), 55 A.D.2d 304, 390 N.Y.S. 122, 127-128. See also Woods v. Holy Cross Hospital (5th Cir. 1979), 591 F.2d 1164, 1179-1180. In Montana, the panel's decision is not admissible, thus precluding the claim that there is any usurpation of the jury function.

We find no violation of the right to a jury trial.

Claimant gets a full and final determination of his claim in a jury trial setting. Requiring plaintiff to begin the process by submitting his claim to the panel is a permissible interference with the jury trial right. See North Central Services, Inc. v Hafdahl (1981), ____Mont.____, 625 P.2d 56, 58-59, 38 St.Rep. 372, 374-375. See also Woods, supra; Johnson v. St. Vincent Hospital, Inc. (1980), ____Ind.____, 404 N.E.2d 585, 591-593; Eastin v. Broomfield (1977), 116 Ariz. 576, 570 P.2d 744, 748-749; Paro v. Longwood Hospital (1977), ____Mass.____, 369 N.E.2d 985, 991.

Plaintiff next contends that the Panel Act denies him his right of access to the courts, in violation of 1972 Mont. Const. Art. II, § 16. Defendants argue that the delays and costs are not so substantial so as to deny access, and that the delays and costs are imposed for rational reasons.

Many other jurisdictions have considered this question, and with the exception of the Missouri Act, all other panel acts have been upheld against this challenge. See Paro, supra, 369 N.E.2d at 989-990; State ex rel. Strykowski v. Wilkie (1978), 81 Wis.2d 491, 261 N.W.2d 434, 444; Prendergast v. Nelson (1977), 199 Neb. 97, 256 N.W.2d 657, 663-664; Woods, supra, 591 F.2d at 1173, fn. 16; Johnson, supra, 404 N.E.2d at 592, and 593-596; Carter v. Sparkman (1976), ____Fla.____, 335 So.2d 802, 805-806.

The courts addressing this issue have noted that access to the courts is not an independent fundamental right; access is only given such a status when another fundamental right--such as the right to dissolve the marital relationship--is at issue, and no alternative forum exists in which to enforce that right. Bobbie ~~Bodie~~ v. Connecticut (1971), 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113. In cases not involving a fundamental right, access may be hindered if there exists a rational basis for doing so. Woods, supra; Paro, supra; Ortwein v. Schwab (1973), 410 U.S.

- 5 -

656, 93 S.Ct. 1172, 35 L.Ed.2d 572. Thus the panel acts have been upheld against the access challenge, because the courts have found find a rational basis for the delays and expense.

In all instances, the articulated basis for the panel acts has been the malpractice crisis existing in many states, with this legislation intended as a means to limit malpractice filings to those which are clearly meritorious. We find that the Montana Act was enacted by the legislature for the same reason.

Because of the complexity of this case, and in view of the fact that we accepted original jurisdiction, we appointed a Master to act as fact-finder for this Court. He heard testimony and accepted exhibits, and issued findings which were subsequently adopted by this Court. His report shows that a medical malpractice crisis exists in the State of Montana, noting that Montana's insurance rate is cited as 17th highest in the United States, and that there is an enormous increase in physicians carrying no insurance. He determined that the legislation was enacted in response to this crisis and to guarantee quality health care to Montanans. Additionally, we note that in 1976 the legislature authorized an interim legislative committee to report to the 1977 legislature on the medical situation in Montana. That committee compiled a report indicating that although the medical situation in Montana "appears to be less critical than in many other states," yet premium costs are ever increasing and the availability of coverage is of "pressing concern." The hearings of the 1977 legislature indicate that the panel act was enacted in response to this situation.

The findings of the Master and the evidence presented to the legislature convinces us that the Panel Act is a reasonable response to the medical situation in Montana. Because the delays and expense are not unreasonable in light of the aims of the statute we find no impermissible burden on access.

This Court has upheld various other legislative enactments which delay or burden the right of access. Without defining the status of the right of access, nor specifically setting out the permissible legislative reasons for restricting access, this Court approved the requirement of a pretrial conference. Carlin v. District Court (1945), 118 Mont. 127, 164 P.2d 155. See also Souders v. District Court (1932), 92 Mont. 272, 12 P.2d 852, in which this Court approved the statute requiring plaintiff to make a deposit with the court before prosecuting a tax deed action. Other states have noted that it is reasonable to require parties to seek administrative resolutions before going to court, Strykowski, supra, 261 N.W.2d at 444, and that a bond may be constitutionally required before a claimant takes a malpractice claim to court. Paro, supra 369 N.E.2d at 989-990. The Florida court determined in Carter, supra, that the costs and delays involved in the panel procedure are primarily related to discovery and would be necessary in preparing to go to court anyway, and thus are reasonable.

The plaintiff urges this Court to follow Madison v. Yunker (1978), _____ Mont. _____, 589 P.2d 126, 35 St.Rep. 1311, in which we found an unconstitutional denial of access in the requirement that a plaintiff demand a retraction from an alleged libeler before filing suit. We find that case to be distinguishable from the instant case in that the Montana Constitution provides every person with an independent right of expression subject to being responsible for all abuses of that liberty. The statute in Madison also changed the remedy for libel which was provided elsewhere in the Constitution. 1972 Mont. Const., Art. II, §§ 7 and 16. The Malpractice Panel Act does not offend such constitutional provisions.

One court has struck down its statute finding that the requirements of the act imposed "useless and arbitrary delay."

- 7 -

The Missouri court determined that the delay could destroy the plaintiff's remedies by abridging the right to file suit immediately, which could result in loss of personal service over defendants. See State ex rel. Cardinal Glennon Memorial Hospital v. Gaertner (1979), ____Mo.____, 583 S.W.2d 107, 110. Plaintiff here also argues that there could be problems with the statute of limitations because of the necessity of filing with the panel before going to court.

We are not unmindful of these problems. However, we do not find that the statutes in Montana would necessarily bring about these unfortunate results. Section 27-6-702, MCA, states that the statute of limitations is tolled upon receipt of the application to the panel and does not begin again until entry of and service on the parties of the panel's decision. We construe that statute to apply to defendants both known and unknown at the time the application is filed with the panel.

Additionally, the Montana Rules of Civil Procedure allow the deposition of a potential witness to be taken prior to filing suit in court. Rule 27, M.R.Civ.P. A plaintiff, fearing that a defendant may leave the jurisdiction, can petition the court for an order allowing him to preserve such testimony.

In sum, we find sufficient safeguards within the act to protect the plaintiff's right of access to the court. The burdens imposed are rationally related to the aims of the act and the act constitutes a reasonable response to the medical situation.

Next, plaintiff challenges the act as being violative of plaintiff's rights to substantive and procedural due process. He does not specifically set forth his due process claims but he appears to dispute that any basis was shown to exist which would justify this type of legislation. There is agreement among all courts considering this legislation, save North Dakota, that the

legislation was adopted to meet a crisis in medical care, and that the legislation appears to be a rational response to that crisis. See Woods, supra, 591 F.2d at 1175-1176; Prendergast, supra, 256 N.W.2d at 667-669. The North Dakota Supreme Court found that no such crisis had been shown to exist in North Dakota, and invalidated the state statute in part on this basis. Arneson v. Olson (1978), ____N.D.____, 270 N.W.2d 125, 136.

The standard articulated by most courts in considering the legislation in light of the substantive due process claim is the "rational basis standard," i.e., the legislation will be upheld if the laws have a reasonable relation to a proper legislative purpose. Woods, supra, 591 F.2d at 1176; Nebbia v. New York (1934), 291 U.S. 502, 536-537, 54 S.Ct. 505, 515-516, 78 L.Ed. 940, 956-957. But see Arneson, supra, 270 N.W.2d at 132-133, utilizing a standard falling somewhere between "strict scrutiny" and "rational basis." We subscribe to the rational basis standard and find that the Panel Act meets this test in light of the situation existing in Montana, as identified by the Master and the legislature.

As we noted in our discussion above, we are satisfied that sufficient evidence was considered by the legislature in determining that there was a near-crisis situation in Montana. We will not substitute our judgment for that of the legislature.

Aside from the access problem which is inherently a procedural due process problem, plaintiff asserts a denial of due process by reason of the existence of doctors on the panel. He claims a built-in bias in the system, which prevents a claimant from receiving a fair hearing.

We note at the outset that the Montana Panel Act, unlike the legislation in other jurisdictions, precludes the introduction into evidence at a subsequent trial, of the panel's findings or decisions. Thus the only effect of the panel's decision on a

plaintiff's case would be to discourage him from taking his claim to court. Even in those states in which the decision is admissible at a later trial, the courts considering this issue have found an insufficient showing of bias or prejudice to amount to a denial of due process. And, in order to effectuate the purposes of the panel, it is advisable to have medical personnel on the panel. Strykowski, supra, 261 N.W.2d at 446. Additionally, it is totally speculative to allege that all health care providers are incapable of rendering an unbiased decision, and a claimant has the opportunity to disqualify any member who is in fact subject to the charge of bias. Section 27-6-404(2), MCA. See also Johnson, supra, 404 N.E.2d at 593; Hines v. Elkhart General Hospital (N.D. Ind. 1979), 465 F.Supp. 421, 429.

We find claimant's due process contentions to be without merit, particularly when considered in view of the limited effect which the panel's decision can have in Montana in subsequent litigation. We do address one issue, though, which was not initially raised by the parties to the litigation, but which came to our attention during the hearing in this case. Section 27-6-704(2), MCA, provides that "[no] statement made by any person during a hearing before the panel may be used as impeaching evidence in court." In order to uphold the constitutionality of the panel act, we determine that this section must be severed from the act. It is fundamental to our adversarial system that litigants retain the right to impeach the sworn testimony of a witness testifying against them. We are mindful that this provision was enacted to aid the fact-finding by the panel and to preserve the confidentiality of the proceedings. But we cannot say that a litigant will receive a full and fair hearing if he is unable to fully cross-examine in court the witnesses that testified in the prior hearing.

This defect is not fatal to the act. We find that the act

is still complete in itself and capable of being executed in accordance with the legislative intent.

Claimant's next contention is that the Panel Act constitutes special legislation and that it violates the equal protection guarantee of the 1972 Montana Constitution and the Fourteenth Amendment. He does not pinpoint the basis of his challenge, but apparently he is arguing that the medical profession as a group of potential tort defendants is getting special treatment not accorded to other tort defendants, and that medically-injured plaintiffs are being subjected to barriers to the judicial system, not put in the way of other tort plaintiffs.

This Court has indicated that reasonable classifications of persons will be upheld against a "special legislation" challenge, or against an equal protection challenge. State ex rel. Sparling v. Hitsman (1935), 99 Mont. 521, 532, 44 P.2d 747, 752; State v. Craig (1976), 169 Mont. 150, 156, 545 P.2d 649, 652-653. A law which operates in the same manner upon all persons in like circumstances is not "special" in the constitutional sense. Sparling, supra. Other courts considering this challenge have determined that this type of legislation is not special legislation, nor is it violative of equal protection, because it operates uniformly on a given class which has been distinguished for rational reasons. Eastin, supra, 570 P.2d at 752; Johnson, supra, 404 N.E.2d at 596-597.

Those courts considering these questions in relation to the panel acts have dealt with the special legislation and equal protection arguments on a similar basis--looking for a rational basis for the classifications which rests on a ground of difference having a fair and substantial relation to the object of the legislation. Leuthold v. Brandjord et al. (1935), 100 Mont. 96, 105, 47 P.2d 41, 45; Paro, supra, 369 N.E.2d at 987-89 and footnote 6; Eastin, supra, 570 P.2d at 750-751; Johnson, supra,

404 N.E.2d at 596-597, citing Royster Guano Co. v. Virginia (1920), 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989. We agree that this is the proper test to apply in this case. There is no allegation of a fundamental right at stake, nor is there a suspect classification involved. Therefore we need only determine whether the discrimination is rationally related to a legitimate state interest. State v. Craig, supra, 169 Mont. at 155-157, 545 P.2d at 652-653.

The burden is on the party challenging the legislation to show that the facts do not support the legislative enactment. State v. Craig, supra. We will presume a statute's validity, unless the constitutional violation is "clear and palpable." Noll & Kenneady v. Bozeman (1975), 166 Mont. 504, 507, 534 P.2d 880, 881. See also Paro, supra, 369 N.E.2d at 988. We conclude here that the claimant did not sustain his burden of proof. Our previous discussion of the findings of the Master and of the evidence presented to the legislature convinces us that the legislature responded to a medical situation in a rational manner. We find that the classifications rest on distinctions between the groups of tort plaintiffs and tort defendants involved which have a fair and rational relationship to the object of the legislation.

The most persuasive equal protection arguments have been challenges to the limitations on recovery--a provision not included in the Montana law. The Illinois court struck down a $500,000 limitation, while Nebraska upheld the same limit against a special legislation and equal protection challenge, again finding a rational basis for this limit. See Wright v. Central Du Page Hospital Association (1976), 63 Ill.2d 313, 347 N.E.2d 736 Prendergast, supra, 256 N.W.2d at 668-69. The objection to such a limitation is the possibility that the most seriously injured plaintiffs are those who are being prevented from full recovery.

No such discrimination is present in the Montana law. All plaintiffs may pursue their remedies to the fullest, conditional only on submitting the claim to the panel. And, again, because the panel decision is not binding nor even admissible in a subsequent court proceeding, there is no possibility of any influence on the jury. Health care providers remain subject to suit, and gain no advantage over any other group of defendants. A jury will never be aware of any decision for or against these defendants by the panel. Any discrimination comes only from the possibility of discouraging suit, a result which is reasonable in light of the medical situation. We find no violation of equal protection or the prohibition against special legislation.

One additional argument advanced by plaintiff is that the Panel Act violates the prohibitions in the Montana Constitution against unlawful delegation of judicial and legislative power and infringes on the doctrine of separation of powers. 1972 Mont. Const. Art. III, § 1, Art. V, § 1, Art. VII, § 1. Plaintiff contends that the panel has been given hearing and decisional powers, but that it cannot render a judicial decision or utilize protective discovery procedures. This, he contends, impedes his access to the courts, and constitutes an unlawful usurpation of power by nonjudicial bodies. Defendants contend that the panel is at most an advisory body and exercises no true judicial functions. Thus there is no separation of powers problem and no unlawful delegation of power.

The Montana Constitution demands that the three branches of government remain separate and distinct, 1972 Mont. Const., Art. III, §1, in order to keep each branch accountable to the people, and to prevent too much power from being lodged in any one branch of government. O'Neill v. Yellowstone Irr. Dist. et al. (1912), 44 Mont. 492, 505, 121 P. 283, 286. A similar provision exists in the constitutions of most states, and most states considering

this question have upheld the panel acts in the face of this challenge. Eastin, supra, 570 P.2d at 750; Johnson, supra, 404 N.E.2d at 597-598; Prendergast, supra, 256 N.W.2d at 666-667. But see Arneson, supra, 270 N.W.2d at 131-132, for a contrary holding.

By the terms of most panel acts, the decision of the panel is admissible in court, but it is not binding in any way. Thus many courts have found no violation of the doctrine of separation of powers, because the actions of the panel are at most advisory and the panel has no power to render an enforceable decision. The result has no more weight than an expert opinion. Prendergast, supra; Eastin, supra. The Arizona Supreme Court noted in Eastin, supra, that "'[j]udicial power is the power of the court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.'" The Montana Court recognizes the same definition of judicial power, and has upheld other administrative bodies against this challenge, where those bodies are unable to render enforceable judgments. Shea v. North-Butte Min. Co. et al. (1919), 55 Mont. 522, 536-537, 179 P. 499, 504.

The decision of the Montana panel is not enforceable, and unlike the panel decisions in most states, it is not even admissible at trial. Sections 27-6-606, 27-6-704(2), MCA. Consequently, we find no merit in plaintiff's arguments. There are no constitutional violations under the Montana Act.

We need not address the remaining issues raised by plaintiff. He contends that the panel act violates 1972 Mont. Const., Art II, §§ 7, 8 and 9, which give to the public a right to participate, a right to know, and give every person a right to sue for slander or libel. He additionally alleges that the legislature has violated 1972 Mont. Const., Art VIII, §§ 1 and 2, which require that taxes shall be levied by general laws for

public purposes, and which forbid the legislature from surrendering or contracting away the power to tax.

Linder has not appeared before the panel. He has not been subjected to the possibility of libel or slander, and he may never be. Thus we find that this question is not properly before this Court under the facts of this case. Nor can he assert that the public is denied the right to participate or the right to know. The Master found:

"Plaintiff Linder has not yet requested and been denied any participation in panel proceedings or any records of any proceedings, nor has plaintiff Linder yet issued and served upon the panel a subpoena for such records, nor has plaintiff Linder yet requested that an official transcript be made of the sworn testimony of any witness or any proceeding before the panel, nor has plaintiff Linder yet been harmed or injured by any failure or refusal of the panel or its administrative officers to so act." Finding No. 14

He has not been affected by the operation of these statutes and therefore he lacks standing to challenge them. Thompson v. Tobacco Root Co-op (1948), 121 Mont. 445, 453, 193 P.2d 811, 816. Additionally, for purposes of this case, Linder is not a member of the excluded public. He is a necessary participant and thus is not in a position to assert this right on behalf of the general public.

Finally, with regard to plaintiff's allegations that health care providers cannot be taxed in order to fund this panel, section 27-6-206, MCA, we note that plaintiff is not a health care provider. He is not among those being taxed. The statute in question does not apply to him and he is not affected by it. He is therefore not in a position to challenge its constitutional validity on this ground. Chovanak v. Matthews (1948), 120 Mont. 520, 527, 188 P.2d 582, 585.

We hold the Medical Malpractice Panel Act to be constitutional, with the exception of the first sentence of subsection 2, section 27-6-704. After severing that section from the

act, we find that the act remains complete and is constitutional.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices