No. 99-032

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 158

300 Mont. 212

4 P. 3d 1193

DAVID HUETHER, Personal Representative of the

Estate of George Huether, Jr., Deceased,

Petitioner,

v.

THE DISTRICT COURT OF THE SIXTEENTH

JUDICIAL DISTRICT OF THE STATE OF

MONTANA, IN AND FOR THE COUNTY OF

CUSTER, THE HONORABLE RICHARD G.

PHILLIPS, Presiding,

Respondent.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Petitioner:

L. Randall Bishop (argued), Jarussi & Bishop, Billings, Montana

For Respondent:

Herbert I. Pierce III (argued), Crowley, Haughey, Hanson, Toole & Dietrich,

Billings, Montana

Honorable Joseph P. Mazurek, Attorney General; Clay R. Smith,

Solicitor, Helena Montana

For Amici Curiae:

Patricia O'Brien Cotter, Cotter & Cotter, P.C., Great Falls, Montana

(Montana Trial Lawyers Association)

Jerome T. Loendorf and Donald Ford Jones, Harrison, Loendorf,

Poston & Duncan, P.C., Helena, Montana (Montana Medical Association)

Molly Shepherd, Worden, Thane & Haines, P.C., Missoula, Montana

(St. Patrick Hospital; St. Joseph Hospital; Clark Fork Valley Hospital;

and Western Montana Clinic)

Katherine S. Donnelley and Kimberly L. Towe, Browning, Kaleczyc,

Berry & Hoven, P.C., Helena, Montana (Montana Hospital Association)

Gregory G. Murphy, Moulton, Bellingham, Longo & Mather, P.C.,

Billings, Montana (St. Vincent Hospital and Health Center and

Sisters of Charity of Leavenworth Health Services Corporation)

Heard and Submitted: September 9, 1999

Decided:

Filed:

_____

Clerk

2

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 On March 25, 1999, this Court accepted jurisdiction of this application for writ of supervisory control over the Sixteenth Judicial District Court, Custer County. We invited briefs by *amicus curiae* and classified the case for oral argument. We now vacate the District Court's determination that documents sought to be discovered by the petitioner, the Estate of George Huether, Jr., are not discoverable under the hospital peer review statutes codified at Title 50, Chapter 16, part 2, MCA, and remand for further proceedings consistent with this Opinion.

¶2 The issue is whether the District Court erred in denying the Estate's discovery request pursuant to Title 50, Chapter 16, part 2, MCA, and this Court's opinion in *Sistok v. Kalispell Regional Hosp.* (1991), 251 Mont. 38, 823 P.2d 251.

¶3 In June 1992, seventy-eight year old George Huether, Jr., underwent surgery for colon cancer at Holy Rosary Hospital in Miles City, Montana. An hour after being returned to the surgical floor from the recovery room, Huether stopped breathing. Although he was successfully resuscitated, he suffered severe brain damage and died when he was taken off

life support a few days later.

¶4 Huether's son, as the personal representative of his estate, filed a wrongful death action against the Hospital, asserting that the Hospital staff did not monitor Huether closely enough following his surgery. As part of discovery, the Estate asked the Hospital to produce "any incident reports or similar reports prepared with regard to any aspect of the care and treatment of George Huether, Jr., while a patient at Holy Rosary Hospital." Specifically, the Estate was interested in any documents indicating that Huether's vital signs were being recorded at least every fifteen minutes by an automatic monitor called a "Critikon."

¶5 The Hospital objected to the discovery request on grounds that any such documents would not be subject to discovery under §§ 50-16-201 through -205, MCA, which provide for confidentiality of information and proceedings of in-hospital medical staff committees, also known as peer review committees. The Estate moved to compel production in compliance with its request. The District Court denied the motion to compel, reasoning that the privilege for data of hospital peer review committees, as set forth in the above statutes and interpreted in this Court's *Sistok* opinion, is absolute.

¶6 The Estate filed an application for this Court's supervisory control. At the Court's invitation, five *amicus curiae* briefs were submitted prior to the oral argument.

## Discussion

¶7 Did the District Court err in denying the Estate's discovery request pursuant to Title 50, Chapter 16, part 2, MCA, and this Court's opinion in *Sistok v. Kalispell Regional Hosp.* (1991), 251 Mont. 38, 823 P.2d 251?

¶8 The Estate argues that the District Court's order denying the motion to compel gives unconstitutional application to Title 50, Chapter 16, part 2, MCA. It asks this Court to clarify whether *Sistok* stands for the rule that an absolute privilege surrounds medical staff committees, and, if so, to expressly overrule *Sistok* or to declare that Title 50, Chapter 16, part 2, MCA, violates the right of access to the courts as set forth at Article II, Section 16 of the Montana Constitution.

¶9 Montana's hospital peer review statutes are typical of the statutes adopted by various states to encourage candor in hospital staff committees which review and evaluate the

quality of medical care provided in their hospitals. The goal is to promote continuous improvement in the quality of health care delivery through review of standardized health care operations and the performance of doctors and staff. *See Sistok*, 251 Mont. at 40-41, 823 P.2d at 253; American Medical Association, *A Compendium of State Peer Review Immunity Laws* (1988 & Supp. 1994); Charles D. Creech, *The Medical Review Committee Privilege: A Jurisdictional Survey*, 67 N.C.L. Rev. 179 (1988). Because the language used in statutes is the first basis for their interpretation, we set forth Title 50**,** Chapter 16, part 2, MCA, in its entirety:

> **50-16-201. Data defined. As used in this part, "data" means written reports, notes, or records of tissue committees or other medical staff committees in connection with the professional training, supervision, or discipline of the medical staff of hospitals.**

> **50-16-202. Committees to have access to information**. It is in the interest of public health and patient medical care that in-hospital medical staff committees have access to the records, information, and other data relating to the condition and treatment of patients in such hospital to study and evaluate for the purpose of evaluating matters relating to the care and treatment of such patients for research purposes and for the purpose of reducing morbidity or mortality and obtaining statistics and information relating to the prevention and treatment of diseases, illnesses, and injuries. To carry out such purposes, any hospital, its agents and employees may provide medical records, information, or other data relating to the condition and treatment of any patient in said hospital to any in-hospital medical staff committee.

> **50-16-203. Committee information and proceedings confidential and privileged.** All such records, data, and information shall be confidential and privileged to said committee and the members thereof, as though such hospital patients were the patients of the members of such committee. All proceedings and in-hospital records and reports of such medical staff committees shall be confidential and privileged.

> **50-16-204. Restrictions on use or publication of information.** Such in-hospital medical staff committees shall use or publish information from such material only for the purpose of evaluating matters of medical care, therapy, and treatment for research and statistical purposes. Neither such in-hospital medical staff committee nor the members, agents, or employees thereof shall disclose the name or identity of any patient whose records have been studied in any report or publication of findings and conclusions of such committee, but such in-hospital medical staff committee, its

members, agents, or employees shall protect the identity of any patient whose condition or treatment has been studied and shall not disclose or reveal the name of any such in-hospital patient.

**50-16-205. Data confidential -- inadmissible in judicial proceedings.** All data shall be confidential and shall not be admissible in evidence in any judicial proceeding, but this section shall not affect the admissibility in evidence of records dealing with the patient's hospital care and treatment.

¶10 *Sistok* represented this Court's first opportunity to interpret Montana's hospital peer review statutes. In that case, Victor Sistok brought suit against the Kalispell Regional Hospital, arguing that the hospital negligently allowed a doctor with a history of alcoholism to perform surgery upon him. In connection with his lawsuit, Sistok sought to depose the former chairman of the hospital committee charged with supervision and discipline of the medical staff, and to discover records and information concerning the committee's prior actions taken against the doctor.

¶11 This Court held that Sistok's deposition subpoena sought information that was clearly privileged and that the District Court had properly quashed the discovery request. In the context presented, the Court stated that § 50-16-203, MCA, "unambiguously confers an absolute privilege on medical staff committees." *Sistok*, 251 Mont. at 40, 823 P.2d at 253.

¶12 The District Court concluded that this Court's opinion in *Sistok* governs in the present case. We disagree. As counsel conceded at oral argument, the facts in *Sistok* are clearly distinguishable from those in the present case. The records which plaintiff Sistok sought to discover concerned prior disciplinary actions taken against his treating physician. In contrast, the records sought in the present case relate to the care and treatment of the plaintiff Estate's decedent.

¶13 This Court's role in statutory construction is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Section 50-16-205, MCA, provides that "data" of medical staff committees shall be confidential and not admissible in evidence, "but this section shall not affect the admissibility in evidence of records dealing with the patient's hospital care and treatment." The right of confidentiality created under § 50-16-205, MCA, is plainly subject to the patient's right of access to records concerning his or her own hospital care and treatment.

¶14 This is consistent with the provisions of another segment of Montana law, the Uniform Health Care Information Act (the Act), enacted in 1987. The Act enumerates patients' rights, including the right to examine or copy all or part of the patient's recorded health care information. *See* § 50-16-541, MCA. "Health care information" is any information relating to the patient's health care, to which the patient's right will not be diminished no matter who else had access to the identical records. *See* §§ 50-16-502(4) and -504(6), MCA. The Act further provides, at § 50-16-522, MCA, that "[a] personal representative of a deceased patient may exercise all of the deceased patient's rights under this part." Therefore, under the Act, the Estate has the right to examine or copy all of Huether's recorded health care information.

¶15 *Amici* point out that peer review committees do not themselves create evidence of what took place in the treatment of a patient. That evidence exists, instead, in the medical record of the patient and in the memories of those who provided treatment, all of which is discoverable and admissible under § 50-16-205, MCA. Such evidence is not shielded from discovery when given to a peer review committee.

¶16 Section 50-16-203, MCA, analogizes the confidentiality of peer review committee proceedings to the confidentiality between a doctor and a patient. It is argued that we may thus assume that a patient has the option of "waiving" the confidentiality of peer review records, like a patient has the option of waiving confidentiality with his or her physician. *See* § 50-16-526, MCA. However, under § 50-16-542(1)(d), MCA, a health care provider may deny a patient access to health care information "compiled and . . . used solely for litigation, quality assurance, peer review, or administrative purposes." Were we to accept the argument that a patient has a wholesale right to "waive" the confidentiality of peer review, § 50-16-542(1)(d), MCA, would be rendered meaningless.

¶17 We here note an inconsistency. Section 50-16-542(1)(d), MCA, while not a subject of this appeal, on its face allows a health care provider to deny a patient access to "health care information" used solely for peer review, among other purposes. The statute's use of the term "health care information" is troubling. The denial of access to "health care information" allowed under § 50-16-542(1)(d), MCA, conflicts with the provisions of the peer review statutes as we have interpreted them above, as well as with the very purpose of the Uniform Health Care Information Act, as set forth at § 50-16-502(2), MCA ("patients need access to their own health care information as a matter of fairness, to enable them to make informed decisions about their health care and to correct inaccurate or incomplete information about themselves"). We bring this conflict to the attention of

the Montana legislature and invite its consideration in reconciling the conflict.

¶18 We conclude that the net effect of the peer review statutes is that "health care information" belongs both to the patient and to the hospital, while "data" is a matter of internal administrative function. Accordingly, we conclude that all "health care information" either reviewed or generated by medical staff committees should be made available to the subject patient. Only the "data" are protected from disclosure. Section 50-16-201, MCA, defines the "data," which "shall be confidential," as:

> <u>written reports, notes, or records</u> of tissue committees or other medical staff committees <u>in connection with the professional training, supervision, or discipline of the medical staff of hospitals.</u>

(Emphasis supplied.) Thus, for example, an "incident report" including a retrospective report of what occurred in the course of a hospital patient's care and treatment would be discoverable by the patient. Records of the discussion and recommendations of a peer review committee as to professional training, supervision, or discipline as a result of such an incident and report would not be discoverable.

¶19 Because the records sought in *Sistok* related to prior disciplinary action by the hospital against Sistok's surgeon, they clearly met the definition of "data" and were not subject to discovery. However, to the extent that the records sought by the Estate in this case relate to Huether's hospital care and treatment, they do not fall within the definition of "data." Such records are subject to discovery by the patient or, as here, by the patient's estate. The statements in *Sistok* that § 50-16-203, MCA, "unambiguously confers an absolute privilege on medical staff committees," 251 Mont. at 40, 823 P.2d at 253, and "confers an absolute privilege," 251 Mont. at 41, 823 P.2d at 253, are limited to the facts of that case and are overruled inasmuch as they may be read to apply to a hospital patient seeking disclosure of information concerning his or her care and treatment.

¶20 In so ruling, we realize that we are limiting the meaning of the last sentence of § 50-16-203, MCA: "All proceedings and in-hospital records and reports of such medical staff committees shall be confidential and privileged." This is necessary to give effect to all of the statutes discussed above. As we have stated:

> [W]e presume that the legislature enacts a law with full knowledge of all existing law on the same subject . . . and does not intend to abrogate or interfere with another

law on the same matter unless the repugnancy between the two is irreconcilable.

*Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 475, 866 P.2d 218, 225. On the other hand, were we to read the statutes as the Estate asks and open all records of peer review committees, we would gut the peer review confidentiality provisions.*

¶21 In *Sistock*, we further mistakenly relied in part upon a criminal procedure statute, § 46-15-332, MCA, in addressing the question of privilege. Because that criminal law statute does not apply to a civil case like *Sistock*, our reliance upon the statute was erroneous. We therefore specifically overrule the one-sentence reference to § 46-15-332, MCA, in *Sistock*, 251 Mont. at 41, 823 P.2d at 253.

¶22 We conclude that to the extent that documents over which the Hospital seeks protection are relevant to Huether's hospital care and treatment, they are discoverable. However, to the extent the requested documents are "in connection with the professional training, supervision, or discipline of the medical staff of [the] hospital[]," they are not discoverable. We recognize that this may require that the court conduct an in-camera review and redact material in the documents relating to supervisory or disciplinary matters.

¶23 Given our decision, we conclude that we need not reach the issue of the constitutionality of the peer review statutes. We remand this case for further proceedings consistent with this Opinion.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice Terry N. Trieweiler dissenting or concurring.

¶24 I concur or dissent from the majority opinion, depending on its meaning. I am not sure from the written opinion or our conference discussion of the opinion that I fully

understand the majority's intent. Therefore, I write separately to make my intent clear.

¶25 It is my opinion that no factual information related to a patient's care, treatment, or condition while at a healthcare facility is privileged from discovery by that patient regardless of where the information is stored or the purpose for which it was gathered.

¶26 A principal problem with the majority opinion is the conclusion in paragraph 20 that the Petitioner may discover records "relevant to the patient's hospital care and treatment" but may not discovery information gathered "in connection with the professional training, supervision, or discipline of the medical staff." In reality, there may be records which are both relevant to the patient's care and treatment and gathered in connection with training, supervision, or discipline. In that event, it is my opinion that the records are discoverable. To hold otherwise, would deny Petitioners the right to due process and the judicial need for fair administration of justice.

¶27 I acknowledge the difficulty encountered by the majority when trying to reconcile Montana's statutory potpourri of privileges from disclosure and rights to discovery of records kept by a healthcare facility. However, in reconciling the provisions of Title 50, Chapter 16, Part 2, MCA, which pertains to information gathered by hospital committees and Part 5 of that same chapter which pertains to the confidentiality and disclosure of a patient's healthcare information in general it is necessary to keep the following rules of construction in mind.

¶28 When a statutory scheme has several provisions, a construction is to be adopted which will, if possible, give effect to all. Section 1-2-101, MCA. A statute dealing with a particular subject will control over a general statute which is inconsistent with it. Section 1-2-102, MCA. And finally, an interpretation which gives effect to a statute is preferred to one which would make it void. Section 1-3-232, MCA, and *Mead v. MSB, Inc.* (1994), 264 Mont. 465, 474, 872 P.2d 782, 788. In particular, "whenever there are differing possible interpretations of [a] statute, a constitutional interpretation is favored over one that is not." *Department of State Lands v. Pettibone* (1985), 216 Mont. 361, 374, 702 P.2d 948, 956.

¶29 In this case, the particular statutes which deal with information gathered by peer review or other hospital committees, protect the confidentiality of that information from discovery by third persons, but clearly treat it no differently than other medical records when the person seeking disclosure is the patient with whom the records are concerned.

¶30 Section 50-16-202, MCA, gives hospital medical staff committees access to records regarding the condition and treatment of patients to study and evaluate care and treatment of those patients. However, to make clear that disclosure of a patient's medical records to hospital committees does not waive the right of confidentiality, the patient would otherwise enjoy with regard to his or her medical record, § 50-16-203, MCA, provides that the records gathered by a committee maintain a confidential status as if the patient became a patient of the committee. It provides for nothing more. The exact language of § 50-16-203, MCA, states:

> All such records, data, and information shall be confidential and privileged to said committee and the members thereof, **as though such hospital patients were the patients of the members of such committee**. All proceedings and in-hospital records and reports and reports of such medical staff committees shall be confidential and privileged.

(Emphasis added.)

¶31 Because information about a patient gathered by a hospital committee is no more privileged than the record of that person's care prepared by his treating physician, the patient has a right to discover that information.

> Since the purpose of the statutory privilege protecting confidential communications between physician and patient is the protection of the patient, it is generally held that the privilege is personal to the patient or someone standing in his stead.

> The physician-patient privilege cannot be asserted by the physician, even for the benefit of the patient, or by the patient's opponent in a legal proceeding, including the prosecution, where the patient is on trial for a crime.

81 Am. Jur. 2d *Witnesses* § 484.

¶32 Section 50-16-204, MCA, limits the purposes for which information gathered about patients by hospital committees can be used. However, that section is clearly for the protection of the patient's privacy. It is not a shield to protect the hospital from discovery by the patient of all relevant information pertaining to his or her care.

¶33 Finally, § 50-16-205, MCA, provides:

> All data shall be confidential and shall not be admissible in evidence in any judicial proceeding, **but this section shall not affect the admissibility in evidence of records dealing with the patient's hospital care and treatment**.

(Emphasis added.)

¶34 Section 50-16-205, MCA, does not mean, as suggested in the majority opinion that "data" gathered by a hospital committee is confidential, while records dealing with the patient's hospital care and treatment are discoverable. In fact, "records" are included within the meaning of "data" found at § 50-16-201, MCA. Section 50-16-205, MCA, simply continues the different treatment given by part 2 to records and other data when sought by third parties and records of a patient's own care and treatment when sought by that patient.

¶35 Section 50-16-541, MCA, confirms a patient's right to discover his or her own healthcare information. While § 50-16-542(1)(d), MCA, makes an exception with regard to information gathered for "peer review, or administrative purposes," that section is a general provision which must be subordinated to the more specific provisions regarding discovery of records kept by hospital committees in part 2. Otherwise, this Court could not accomplish its required role of interpreting these inconsistent provisions in a way that gives effect to all of them. Furthermore, if § 50-16-542, MCA, was construed in a fashion that denied patients access to records of their care and treatment, when the quality of that care and treatment is directly at issue as it is in this case, it would, in my opinion, be an unconstitutional denial of the plaintiff's right to due process.

¶36 The closest we have come to considering the due process implications of suppressing evidence in medical malpractice claims was our decision in *Linder v. Smith* (1981), 193 Mont. 20, 629 P.2d 1187. The principal issue on appeal in that case was the constitutionality of the Medical Malpractice Panel Act. While the court held that the act was not generally offensive to any constitutional provision, the Court did invalidate that part of the act which prohibited a party to a panel proceeding from using statements made at that proceeding to impeach a witness who testifies inconsistently at a subsequent proceeding. The court held as follows:

> Section 27-6-704(2), MCA, provides that: "(no) statement made by any person during a hearing before the panel may be used as impeaching evidence in court." In order to uphold the constitutionality of the panel act, we determine that this section

must be severed from the act. It is fundamental to our adversarial system that litigants retain the right to impeach the sworn testimony of a witness testifying against them. We are mindful that this provision was enacted to aid the fact-finding by the panel and to preserve the confidentiality of the proceedings. But we cannot say that a litigant will receive a full and fair hearing if he is unable to fully cross-examine in court the witnesses that testified in the prior hearing.

*Linder, 193 Mont. at 30, 629 P.2d at 1192.*

¶37 Further development of the facts illustrates that effective cross-examination is also the basis for the Petitioner's discovery request in this case. The Petitioner's decedent, George Huether, Jr., had surgery for removal of a malignant tumor from his cecum at Holy Rosary Hospital in Miles City, Montana, on June 10, 1992. His records indicate that following surgery and a normal recovery he was discharged from the recovery room and transferred to the medical-surgical floor at 12:15 p.m. on that date. His attending physician directed the nursing staff to monitor his condition at 15-minute intervals. His records also indicate that his vital signs were checked at 12:30 p.m. and 1:30 p.m. when he went into respiratory arrest. However, there was nothing in his medical chart to indicate that his vital signs had been checked at 15-minute intervals.

¶38 After Mr. Huether was resuscitated he had severe anoxic encephalopathy. He was taken off life support systems and died three days later.

¶39 On July 15, 1992, Mr. Huether's treating physician wrote to the decedent's family with the following concerns about the decedent's follow-up care:

> The information that you and your family provided regarding the events in the room prior to the incident indicates to me a nursing problem and, therefore, I have referred your letter to the administration of the hospital and the Department of Nursing. They will be contacting you in the near future.

¶40 Based on the attending physician's letter, the family's observations while present in the decedent's room, and the decedent's medical records, the Petitioners assumed that the medical chart accurately reflected the extent to which the decedent's vital signs had been monitored following his transfer to the medical-surgery floor and that those facts would be confirmed by the hospital's investigation.

¶41 On June 19, 1998, however, members of the nursing staff responsible for the decedent's care testified that his blood pressure and heart rate had been continuously monitored by a Critikon device following his transfer to the medical-surgery floor.

¶42 The basis of the Petitioner's claim is that George Huether's condition was inadequately monitored. The medical records reflect one course of observation. The nurses' testimony indicates another course of observation. Presumably, the investigation conducted at the treating physician's request shortly after Mr. Huether's death will provide further information critical to this issue. To deny access to that information which may be dispositive of the primary issue in this case simply because it has now been included among peer review or other committee records, would be to deny Petitioners possible information necessary to effectively cross-examine the hospital's witnesses and to prove their case.

¶43 This specific issue was considered by the Supreme Court of Kansas in *Adams v. St. Francis Regional Medical Center* (Kan. 1998), 955 P.2d 1169. In that case, the plaintiffs' decedent died as a result of a ruptured ectopic pregnancy while being treated at the defendant hospital. Plaintiffs alleged that the attending nurse did not recognize the seriousness of the decedent's condition and negligently failed to alert her physician to her need for immediate attention. The issue before the Kansas court was whether the plaintiffs could discover disciplinary action forms prepared by the hospital in conjunction with peer review. Peer review information was protected by statute in Kansas as it is in Montana by § 50-16-542, MCA. The court held that in resolving the issue with which it was presented, it had to weigh the privilege granted to healthcare providers against the plaintiffs' right to due process and the judicial need for the fair administration of justice. *Adams*, 955 P.2d at 1187. It resolved that issue in favor of discovery and gave the following explanation:

> To allow the hospital here to insulate from discovery the facts and information which go to the heart of the plaintiffs' claim would deny plaintiffs that right and, in the words of the federal court, "raise significant constitutional implications." 129 F. R.D. at 551. The constitutional implication was stated by this court in *Ernest v. Faler*, 237 Kan. 125, 131, 697 P.2d 870 (1985):
>
> "The right of the plaintiff involved in this case is the fundamental constitutional right to have remedy for an injury to person or property by due course of law. This right is recognized in the Kansas Bill of Rights § 18, which provides that all persons, for injuries suffered in person, reputation or property, shall have a remedy

by due course of law, and justice administered without delay."

. . . .

> In the present case, we conclude that although the interest in creating a statutory peer review privilege is strong, it is outweighed by the fundamental right of the plaintiffs to have access to all the relevant facts. The district court's protective order and order granting other discovery relief denied plaintiffs that access and thus violated plaintiffs' right to due process and a fair determination of their malpractice action against the defendants. The information generated by the peer review committee, detailing the committee's decision-making process, the officers' or committee's conclusions, or final decisions, is not subject to discovery by the plaintiffs. The district court has a duty to conduct an in camera inspection and craft a protective order which will permit the plaintiffs access to the relevant facts. Forms and documents containing factual accounts and witnesses' names are not protected simply because they also contained the officers' or committee's conclusions or decision-making process. The court can simply redact that which is protected and grant plaintiffs access to the portions containing the relevant facts.

*Adams*, 955 P.2d at 1187-88.

¶44 The State of Montana, through the Office of the Attorney General, and the Respondent in this case, argue that *Adams* is unpersuasive because it is based upon a fundamental right found in the Kansas Constitution to full legal redress for all injuries. They argue that although Montana has a similar provision at Article II, Section 16 of the Montana Constitution, we have held that that right is not fundamental and the parameters of the right are as defined by the legislature. *See Meech v. Hillhaven West, Inc.* (1989), 238 Mont. 21, 776 P.2d 488. Assuming, without agreeing, that the State's and Respondent's position is correct, it has no relevance to the facts in this case because the legislature has not acted to deny victims of negligent medical care, recovery for their injuries. Therefore, the damages sought by the Petitioners in this case are constitutionally protected by Article II, Section 16 and the reasoning in the *Adams* decision would render the peer review statutes invalid, were they not interpreted in a way that permits discovery by the Petitioners of all facts pertaining to the decedent's care and treatment, regardless of where those facts are kept or how and why they were gathered.

¶45 To the extent that the majority opinion permits discovery by the Petitioners of all facts

pertaining to the decedent's care and treatment, I concur in that opinion. To the extent that discovery of those facts is limited, I dissent from the majority opinion.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr. and Justice James C. Nelson, join in the foregoing concurring or dissenting opinion.

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON