*220 JUSTICE TRIEWEILER
dissenting or concurring.
¶24 I concur or dissent from the majority opinion, depending on its meaning. I am not sure from the written opinion or our conference discussion of the opinion that I fully understand the majority’s intent. Therefore, I write separately to make my intent clear.
¶25 It is my opinion that no factual information related to a patient’s care, treatment, or condition while at a healthcare facility is privileged from discovery by that patient regardless of where the information is stored or the purpose for which it was gathered.
¶26 A principal problem with the majority opinion is the conclusion in paragraph 20 that the Petitioner may discover records “relevant to the patient’s hospital care and treatment” but may not discover information gathered “in connection with the professional training, supervision, or discipline of the medical staff.” In reality, there may be records which are both relevant to the patient’s care and treatment and gathered in connection with training, supervision, or discipline. In that event, it is my opinion that the records are discoverable. To hold otherwise, would deny Petitioners the right to due process and the judicial need for fair administration of justice.
¶27 I acknowledge the difficulty encountered by the majority when trying to reconcile Montana’s statutory potpourri of privileges from disclosure and rights to discovery of records kept by a healthcare facility. However, in reconciling the provisions of Title 50, Chapter 16, Part 2, MCA, which pertains to information gathered by hospital committees and Part 5 of that same chapter which pertains to the confidentiality and disclosure of a patient’s healthcare information in general it is necessary to keep the following rules of construction in mind.
¶28 When a statutory scheme has several provisions, a construction is to be adopted which will, if possible, give effect to all. Section 1-2-101, MCA. A statute dealing with a particular subject will control over a general statute which is inconsistent with it. Section 1-2-102, MCA. And finally, an interpretation which gives effect to a statute is preferred to one which would make it void. Section 1-3-232, MCA, and Mead v. MSB, Inc. (1994), 264 Mont. 465, 474, 872 P.2d 782, 788. In particular, “whenever there are differing possible interpretations of [a] statute, a constitutional interpretation is favored over one that is not Department of State Lands v. Pettibone (1985), 216 Mont. 361, 374, 702 P.2d 948, 956.
¶29 In this case, the particular statutes which deal with information gathered by peer review or other hospital committees, protect the *221 confidentiality of that information from discovery by third persons, but clearly treat it no differently than other medical records when the person seeking disclosure is the patient with whom the records are concerned.
¶30 Section 50-16-202, MCA, gives hospital medical staff committees access to records regarding the condition and treatment of patients to study and evaluate care and treatment of those patients. However, to make clear that disclosure of a patient’s medical records to hospital committees does not waive the right of confidentiality, the patient would otherwise enjoy with regard to his or her medical record, § 50-16-203, MCA, provides that the records gathered by a committee maintain a confidential status as if the patient became a patient of the committee. It provides for nothing more. The exact language of § 50-16-203, MCA, states:
All such records, data, and information shall be confidential and privileged to said committee and the members thereof, as though such hospital patients were the patients of the members of such committee. All proceedings and in-hospital records and reports and reports of such medical staff committees shall be confidential and privileged.
(Emphasis added.)
¶31 Because information about a patient gathered by a hospital committee is no more privileged than the record of that person’s care prepared by his treating physician, the patient has a right to discover that information.
Since the purpose of the statutory privilege protecting confidential communications between physician and patient is the protection of the patient, it is generally held that the privilege is personal to the patient or someone standing in his stead.
The physician-patient privilege cannot be asserted by the physician, even for the benefit of the patient, or by the patient’s opponent in a legal proceeding, including the prosecution, where the patient is on trial for a crime.
81 Am. Jur. 2d Witnesses § 484.
¶32 Section 50-16-204, MCA, limits the purposes for which information gathered about patients by hospital committees can be used. However, that section is clearly for the protection of the patient’s privacy. It is not a shield to protect the hospital from discovery by the patient of all relevant information pertaining to his or her care.
¶33 Finally, § 50-16-205, MCA, provides:
*222 All data shall be confidential and shall not be admissible in evidence in any judicial proceeding, but this section shall not affect the admissibility in evidence of records dealing with the patient’s hospital care and treatment.
(Emphasis added.)
¶34 Section 50-16-205, MCA, does not mean, as suggested in the majority opinion that “data” gathered by a hospital committee is confidential, while records dealing with the patient’s hospital care and treatment are discoverable. In fact, “records” are included within the meaning of “data” found at § 50-16-201, MCA. Section 50-16-205, MCA, simply continues the different treatment given by part 2 to records and other data when sought by third parties and records of a patient’s own care and treatment when sought by that patient.
¶35 Section 50-16-541, MCA, confirms a patient’s right to discover his or her own healthcare information. While § 50-16-542(1)(d), MCA, makes an exception with regard to information gathered for “peer review, or administrative purposes,” that section is a general provision which must be subordinated to the more specific provisions regarding discovery of records kept by hospital committees in part 2. Otherwise, this Court could not accomplish its required role of interpreting these inconsistent provisions in a way that gives effect to all of them. Furthermore, if § 50-16-542, MCA, was construed in a fashion that denied patients access to records of their care and treatment, when the quality of that care and treatment is directly at issue as it is in this case, it would, in my opinion, be an unconstitutional denial of the plaintiff’s right to due process.
¶36 The closest we have come to considering the due process implications of suppressing evidence in medical malpractice claims was our decision in Linder v. Smith (1981), 193 Mont. 20, 629 P.2d 1187. The principal issue on appeal in that case was the constitutionality of the Medical Malpractice Panel Act. While the court held that the act was not generally offensive to any constitutional provision, the Court did invalidate that part of the act which prohibited a party to a panel proceeding from using statements made at that proceeding to impeach a witness who testifies inconsistently at a subsequent proceeding. The court held as follows:
Section 27-6-704(2), MCA, provides that: “(no) statement made by any person during a hearing before the panel may be used as impeaching evidence in court.” In order to uphold the constitutionality of the panel act, we determine that this section must be severed *223 from the act. It is fundamental to our adversarial system that litigants retain the right to impeach the sworn testimony of a witness testifying against them. We are mindful that this provision was enacted to aid the fact-finding by the panel and to preserve the confidentiality of the proceedings. But we cannot say that a litigant will receive a full and fair hearing if he is unable to fully cross-examine in court the witnesses that testified in the prior hearing.
Linder, 193 Mont. at 30, 629 P.2d at 1192.
¶37 Further development of the facts illustrates that effective cross-examination is also the basis for the Petitioner’s discovery request in this case. The Petitioner’s decedent, George Huether, Jr., had surgery for removal of a malignant tumor from his cecum at Holy Rosary Hospital in Miles City, Montana, on June 10, 1992. His records indicate that following surgery and a normal recovery he was discharged from the recovery room and transferred to the medical-surgical floor at 12:15 p.m. on that date. His attending physician directed the nursing staff to monitor his condition at 15-minute intervals. His records also indicate that his vital signs were checked at 12:30 p.m. and 1:30 p.m. when he went into respiratory arrest. However, there was nothing in his medical chart to indicate that his vital signs had been checked at 15-minute intervals.
¶38 After Mr. Huether was resuscitated he had severe anoxic encephalopathy. He was taken off life support systems and died three days later.
¶39 On July 15, 1992, Mr. Huether’s treating physician wrote to the decedent’s family with the following concerns about the decedent’s follow-up care:
The information that you and your family provided regarding the events in the room prior to the incident indicates to me a nursing problem and, therefore, I have referred your letter to the administration of the hospital and the Department of Nursing. They will be contacting you in the near future.
¶40 Based on the attending physician’s letter, the family’s observations while present in the decedent’s room, and the decedent’s medical records, the Petitioners assumed that the medical chart accurately reflected the extent to which the decedent’s vital signs had been monitored following his transfer to the medical-surgery floor and that those facts would be confirmed by the hospital’s investigation.
*224 ¶41 On June 19, 1998, however, members of the nursing staff responsible for the decedent’s care testified that his blood pressure and heart rate had been continuously monitored by a Critikon device following his transfer to the medical-surgery floor.
¶42 The basis of the Petitioner’s claim is that George Huether’s condition was inadequately monitored. The medical records reflect one course of observation. The nurses’ testimony indicates another course of observation. Presumably, the investigation conducted at the treating physician’s request shortly after Mr. Huether’s death will provide further information critical to this issue. To deny access to that information which may be dispositive of the primary issue in this case simply because it has now been included among peer review or other committee records, would be to deny Petitioners possible information necessary to effectively cross-examine the hospital’s witnesses and to prove their case.
¶43 This specific issue was considered by the Supreme Court of Kansas in Adams v. St. Francis Regional Medical Center (Kan. 1998), 955 P.2d 1169. In that case, the plaintiffs’ decedent died as a result of a ruptured ectopic pregnancy while being treated at the defendant hospital. Plaintiffs alleged that the attending nurse did not recognize the seriousness of the decedent’s condition and negligently failed to alert her physician to her need for immediate attention. The issue before the Kansas court was whether the plaintiffs could discover disciplinary action forms prepared by the hospital in conjunction with peer review. Peer review information was protected by statute in Kansas as it is in Montana by § 50-16-542, MCA. The court held that in resolving the issue with which it was presented, it had to weigh the privilege granted to healthcare providers against the plaintiffs’ right to due process and the judicial need for the fair administration of justice. Adams, 955 P.2d at 1187. It resolved that issue in favor of discovery and gave the following explanation:
To allow the hospital here to insulate from discovery the facts and information which go to the heart of the plaintiffs’ claim would deny plaintiffs that right and, in the words of the federal court, “raise significant constitutional implications.” 129 F.R.D. at 551. The constitutional implication was stated by this court in Ernest v. Faler, 237 Kan. 125, 131, 697 P.2d 870 (1985):
“The right of the plaintiff involved in this case is the fundamental constitutional right to have remedy for an injury to person or property by due course of law. This right is *225 recognized in the Kansas Bill of Rights § 18, which provides that all persons, for injuries suffered in person, reputation or property, shall have a remedy by due course of law, and justice administered without delay.”
In the present case, we conclude that although the interest in creating a statutory peer review privilege is strong, it is outweighed by the fundamental right of the plaintiffs to have access to all the relevant facts. The district court’s protective order and order granting other discovery relief denied plaintiffs that access and thus violated plaintiffs’ right to due process and a fair determination of their malpractice action against the defendants. The information generated by the peer review committee, detailing the committee’s decision-making process, the officers’ or committee’s conclusions, or final decisions, is not subject to discovery by the plaintiffs. The district court has a duty to conduct an in camera inspection and craft a protective order which will permit the plaintiffs access to the relevant facts. Forms and documents containing factual accounts and witnesses’ names are not protected simply because they also contained the officers’ or committee’s conclusions or decision-making process. The court can simply redact that which is protected and grant plaintiffs access to the portions containing the relevant facts.
Adams, 955 P.2d at 1187-88.
¶44 The State of Montana, through the Office of the Attorney General, and the Respondent in this case, argue that Adams is unpersuasive because it is based upon a fundamental right found in the Kansas Constitution to full legal redress for all injuries. They argue that although Montana has a similar provision at Article II, Section 16 of the Montana Constitution, we have held that that right is not fundamental and the parameters of the right are as defined by the legislature. See Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 776 P.2d 488. Assuming, without agreeing, that the State’s and Respondent’s position is correct, it has no relevance to the facts in this case because the legislature has not acted to deny victims of negligent medical care, recovery for their injuries. Therefore, the damages sought by the Petitioners in this case are constitutionally protected by Article II, Section 16 and the reasoning in the Adams decision would render the peer review statutes invalid, were they not interpreted in a way that permits discovery by the Petitioners of all facts pertaining to the dece *226 dent’s care and treatment, regardless of where those facts are kept or how and why they were gathered.
¶45 To the extent that the majority opinion permits discovery by the Petitioners of all facts pertaining to the decedent’s care and treatment, I concur in that opinion. To the extent that discovery of those facts is limited, I dissent from the majority opinion.
JUSTICE HUNT and JUSTICE NELSON, join in the foregoing concurring or dissenting opinion.